# IN THE UNITED STATES DISTRICT COURT FOR THE

# EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | ) ) | **1:08-cv-1469  AWI SMS** |
| | ) | **ORDER ON DEFENDANT'S** |
| **Plaintiff,** | ) | **AND PLAINTIFF'S** |
| | ) | **RESPECTIVE MOTIONS FOR** |
| **v.** | ) | **SUMMARY JUDGMENT** |
| | ) | |
| **TIMELESS INVESTMENTS, INC. dba** | ) | |
| **EZ TRIP GOLDEN STATE** | ) | |
| **CONVENIENCE AND AUTO/TRUCK** | ) | (Doc. Nos. 31, 32) |
| **PLAZA, and DOES 1-5, inclusive,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

        This is a suit brought under 29 U.S.C. § 621 et seq., the Age Discrimination in Employment Act ("ADEA"), by the Equal Employment Opportunity Commission ("EEOC") against Defendant Timeless Investments, Inc. ("Timeless").  The EEOC brings this suit on behalf of two charging parties, James Rex ("Rex") and Larry Carlberg ("Carlberg"), who unsuccessfully applied for employment with Timeless.  The EEOC seeks injunctive relief for the public interest and seeks compensatory and liquidated damages for Rex and Carlberg.  Both parties move for summary judgment – Timeless on the claims against it and the EEOC on various affirmative defenses.  For the reasons that follow, the motions will be granted in part and denied in part.

# BACKGROUND[1]

Timeless operates Klein's Truck and Auto Plaza, which is located in Fresno, California, and consists of a convenience store and gas station ("EZ Trip"), a fuel desk or plaza ("the Plaza"), a truck repair shop, and a restaurant.  See PUF 1.1.  In July 2004, Timeless had an opening for cashier positions because at least four cashiers had ended their employment.  See PUF 1.2,[2] 11.6, 11.7.  Specifically, four cashiers separated from Timeless on June 21, 2004, and a fifth separated on July 19, 2004.  See PUF 11.6.  Sometime in the summer of 2004, Timeless placed an advertisement in the Fresno Bee confirming that they were looking for a cashier.  PUF 1.8.  The advertisement read: "CASHIER STOCKING: Up to $10/hr., apply in person, see manager @ - - - - N. Golden State Blvd., near Herndon."  Plaintiff's Ex. 169; see also PUF 7.1.  Timeless received over 160 applications in response to this add.  See DUF 37; see also PUF 11.2.  Insurance benefits were not provided for the cashier positions.  See Shiralian Dec. ¶ 11.  In July 2004, Timeless's president Shawn Shiralian ("Shiralian") was responsible for hiring management level employees, and former general manager, Harry Rafayelyan ("Rafayelyan") was responsible for hiring non-management employees, including cashiers.  See PUF 1.3, 3.14, 13.7; DRPUF 1.3; Plaintiff's Ex. 230.

Rex saw the add in the Fresno Bee.  See Defense Ex. B.  On July 5, 2004, Rex filled out an application with Timeless.  PUF 3.1.  Rex was told by "Alicia" to write his age on the application because the manager wanted to know the applicant's age.[3] Id.;[4] see also DUF 11.

---

[1] "PUF" refers to Plaintiff's Undisputed Material Facts, and "DUF" refer's to Defendant's Undisputed Material Facts.

[2] Timeless disputes this PUF.  However, Timeless does not dispute PUF 11.6, which identifies five cashiers who separated from Timeless in June and July 2004, or PUF 11.7, which identifies four cashiers hired in July 2004.  PUF 1.2 is not genuinely disputed.

[3] Alicia Corona has declared that she never asked an applicant write down their age on an application.  See Corona Dec. ¶ 3.  This is a material dispute.  Since Timeless moves for summary judgment, the Court must take the facts in favor of the EEOC.  For purposes of this motion only, Alicia asked Rex to write down his age.

[4] Timeless objects that the statements of "Alicia" are hearsay.  However, Rafayelyan testified that clerks distribute and accept applications, see Rafayelyan Depo. at 54:21-55:8, 57:24-58:3; PUMF 3.3, time records indicate that Alicia Corona was working on July 5, see PUMF 3.5, and Rafayelyan confirmed that one of Timeless's cashiers accepted both Rex and Carlberg's applications.  See PUMF 3.7.  The indication is that "Alicia" was Alicia Corona and that speaking about the application was within the course and scope of her duties as a clerk.  Under these circumstances, Alicia's statements are admissible as admissions of a party opponent.  See Fed. R. Ev. 801(d)(2)(D).

2

Rex wrote his age on the application.  See Defense Ex. B.  Rex was 60 years old in July 2004.

See PUF 3.9.  Rex's application indicates that he was currently employed at a Mobil gas station

as a cashier, he had been employed as a cashier since March 15, 2004, he was also currently

employed as a caterer, he was a high school and trade school graduate, he requested a salary of

$9.00/hour, and he could start work on July 20, 2004, i.e. in roughly two weeks.  See Defense

Ex. B; see also PUF 5.2; DUF 3.  Rex was neither interviewed nor hired by Timeless.  PUF 6.1.

Carlberg saw Timeless's advertisement in the Fresno Bee and went to the identified

location to apply on July 6, 2004.  See PUF 2.2; Defense Ex. C.  When Carlberg submitted his

application, he was asked by a female clerk to write his age on the upper right hand corner of the

application.  PUF 2.3; see also DUF 11.  Carlberg questioned the clerk's request.  See id.

Carlberg told the clerk, "I thought you were not supposed to ask me my age."  PUF 2.4.  The

clerk told him that it might be to his advantage to write down his age because the younger men

who had been hired did not show up for work.  See Carlberg Depo. 27:1-3.  Carlberg wrote his

age in the upper right hand corner of his application.  See Defense Ex. C.  Carlberg was 62 years

old in July 2004.  PUMF 2.1.  Carlberg's application indicated that he was employed part time,

he was employed as a "driver" making $8.00/hour, he was a high school graduate, he desired a

wage of $10.00/hour, he could start the next day (July 7, 2004), and that his previous jobs were

as a tree trimmer/greens keeper.  See Defense Ex. C.  Carlberg's application does not indicate

that he had any cashier experience.  See id.  At some point while speaking with the clerk, the

manager was referenced, the clerk pointed out the manager, and the manager looked at Carlberg

and told Carlberg that he would call him.  See Carlberg Depo. 32:23-33:9.[5]  Carlberg was neither

interviewed nor hired by Timeless.  PUF 6.1.

On July 14, 2004, Timeless hired Paul H., who was 30 years old, as a cashier.  See PUF

6.2, 11.7, 12.20; Plaintiff's Ex. 168; Court's Docket Doc. No. 32 at p. 6 & No. 39 at 5.  On July

15, 2004, Timeless hired Marisela G., who was 18 years old, as a cashier.  See id.  On July 22,

2004, Timeless hired Jessica G., who was 21 years old, as a cashier.  See id.; PUF 10.10.  On

---

[5]The EEOC contends that Carlberg returned to the store some other day and spoke to the manager. However, as Timeless correctly points out, Carlberg unambiguously testified that he never returned and that the conversation with the manager occurred on the day he submitted his application.  See Carlberg Depo. 32:18-33:9.

July 29, 2004, Timeless hired Dominque C., who was 27 years old, as a cashier.  See id.  On October 20, 2004, Timeless hired Steve F., who was 21 years old, as a cashier.  See id.  Marisela G's application and Steve F.'s application do not indicate any prior cashier experience.  See PUF 6.3, 6.4, 9.1; Plaintiff's Exs. 131, 133.

Rafayelyan declared that he does not recall receiving Rex and Carlberg's applications, does not recall interviewing anyone within a week of July 4 because he would have been too busy to do so, and generally reviews the most recent applications unless there are no qualified individuals among the most recent applications.  See Rafayelyan Dec. ¶ 9.  With respect to the reasons for not hiring Rex and Carlberg, Rafayelyan declares:

> Assuming I did review their applications, I would not have interviewed them in any event.  That is because Mr. Rex was working two other jobs and not immediately available, and Mr. Carlberg [] had no experience as a cashier.  With 160 applications for a single position, I had the luxury of being very 'picky' and would skip over the application of any candidate who was less than perfect who had immediate availability.  Neither claimant fit the need I had at the time.
>
> If a candidate was not available to work immediately I did not consider them, as I did not want to wait for the candidate to give the customary two weeks notice to the other employer.  When hiring, I usually needed to fill a position quickly and did not have two weeks to spare for any candidate, no matter how qualified.  Mr. Rex was not immediately available.

Id. at ¶¶ 10, 11; see also DUF's 24- 27, 32.

On or about July 29, 2004, Rex filed a charge of age discrimination against Timeless. PUF 8.1.  Under the "particulars" section of the charge, Rex indicated, "On July 5, 2004, I filled out an application for employment with [Timeless].  When I submitted the application, [Timeless] told me to write my age on the upper right-hand corner of the application.  I was not selected for the position.  [Timeless]'s employee Alicia (LNU) told me that her manager liked to know the age of each applicant.  I believe I was discriminated against because of my age." Defense Ex. H.

On or about November 23, 2004, Carlberg filed a charge of discrimination against Timeless.  PUF 8.2.  The "particulars" section of the charge generally follows, and is consistent with, Carlberg's deposition testimony – a female clerk asked for his age, Carlberg stated that he did not think that this could be asked, and the clerk responded that it might be to his advantage

1   because the younger hires had caused trouble.  See Defense Ex. J.[6]

2          On October 4, 2004, and December 3, 2004, Timeless sent the EEOC various documents

3   and information.  See Defense Exs. E, F.  On September 28, 2006, the EEOC sent Timeless a

4   letter of determination.  See PUMF 8.9.  On January 24, 2008, the EEOC a letter to Timeless and

5   offered to conciliate.  See Plaintiff's Exs. 179, 180.  On February 29, 2008, the parties had a

6   conciliation meeting.  See Plaintiff's Ex. 206.  On September 29, 2008, the EEOC filed this

7   lawsuit.  PUMF 8.15.  Sometime in December 2008, Rex died.  See Nostrant Depo. 51:23-25.

8

9                          **SUMMARY JUDGMENT FRAMEWORK**

10         Summary judgment is appropriate when it is demonstrated that there exists no genuine

11  issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

12  Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Fortyune v.

13  American Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004).  The party seeking summary

14  judgment bears the initial burden of informing the court of the basis for its motion and of

15  identifying the portions of the declarations (if any), pleadings, and  discovery that demonstrate an

16  absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986);

17  Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  A fact is "material" if it

18  might affect the outcome of the suit under the governing law.  See Anderson v. Liberty Lobby,

19  Inc., 477 U.S. 242, 248-49 (1986); Thrifty Oil Co. v. Bank of America Nat'l Trust & Savings

20  Assn, 322 F.3d 1039, 1046 (9th Cir. 2002).  A dispute is "genuine" as to a material fact if there is

21  sufficient evidence for a reasonable jury to return a verdict for the non-moving party.  Anderson,

22  477 U.S. at 248; Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006).

23         Where the moving party will have the burden of proof on an issue at trial, the movant

24  must affirmatively demonstrate that no reasonable trier of fact could find other than for the

25  movant.  Soremekun, 509 F.3d at 984.  Where the non-moving party will have the burden of

26

27         [6]There is one significant difference between Carlberg's EEOC charge and his deposition testimony.  His
    charge indicates that he returned to EZ Trip over two days, and on the second day the manager said he would review
28  Carlberg's application.  See Defense Ex. J.  However, Carlberg's deposition testimony states that he did not return to
    the EZ Trip.  See Carlberg Dep. 32:18-33:9.  The Court will credit Carlberg's sworn deposition testimony.

                                           5

proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential

element of the non-moving party's claim or by merely pointing out that there is an absence of

evidence to support an essential element of the non-moving party's claim.  See James River Ins.

Co. v. Schenk, P.C., 519 F.3d 917, 925 (9th Cir. 2008); Soremekun, 509 F.3d at 984; Nissan Fire

& Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1105-06 (9th Cir. 2000).  If a moving party fails

to carry its burden of production, then "the non-moving party has no obligation to produce

anything, even if the non-moving party would have the ultimate burden of persuasion."  Nissan

Fire & Marine Ins. Co. v. Fritz Companies, 210 F.3d 1099, 1102-03 (9th Cir. 2000).  If the

moving party meets its initial burden, the burden then shifts to the opposing party to establish

that a genuine issue as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v.

Zenith Radio Corp., 475 U.S. 574, 586 (1986); Nissan Fire & Marine, 210 F.3d at 1103.  The

opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must

instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for

trial.'"  Estate of Tucker v. Interscope Records, 515 F.3d 1019, 1030 (9th Cir. 2008) (quoting

Fed. R. Civ. Pro. 56(e)).

        The evidence of the opposing party is to be believed, and all reasonable inferences that

may be drawn from the facts placed before the court must be drawn in favor of the opposing

party.  See Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587; Stegall v. Citadel Broad,

Inc., 350 F.3d 1061, 1065 (9th Cir. 2003).  Nevertheless, inferences are not drawn out of the air,

and it is the opposing party's obligation to produce a factual predicate from which the inference

may be drawn.  See Sanders v. City of Fresno, 551 F.Supp.2d 1149, 1163 (E.D. Cal. 2008);

UMG Recordings, Inc. v. Sinnott, 300 F.Supp.2d 993, 997 (E.D. Cal. 2004).  "A genuine issue of

material fact does not spring into being simply because a litigant claims that one exists or

promises to produce admissible evidence at trial."  Del Carmen Guadalupe v. Agosto, 299 F.3d

15, 23 (1st Cir. 2002); see Galen v. County of Los Angeles, 477 F.3d 652, 658 (9th Cir. 2007);

Bryant v. Adventist Health System/West, 289 F.3d 1162, 1167 (9th Cir. 2002).  Further, a

"motion for summary judgment may not be defeated . . . by evidence that is 'merely colorable' or

'is not significantly probative.'"  Anderson, 477 U.S. at 249-50; Hardage v. CBS Broad. Inc., 427

F.3d 1177, 1183 (9th Cir. 2006).  Additionally, the court has the discretion in appropriate

circumstances to consider materials that are not properly brought to its attention, but the court is

not required to examine the entire file for evidence establishing a genuine issue of material fact

where the evidence is not set forth in the opposing papers with adequate references.  See

Southern Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Carmen v. San

Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).  If the nonmoving party fails

to produce evidence sufficient to create a genuine issue of material fact, the moving party is

entitled to summary judgment.  See Nissan Fire & Marine, 210 F.3d at 1103.


## I.   PLAINTIFF'S MOTION

**A.   First Affirmative Defense – Failure to State a Claim**

> *Plaintiff's Argument*

The EEOC argues that Timeless already filed an unsuccessful Rule 12(b)(6) motion.

Because the issue has previously been briefed and litigated, and because there are no new

arguments that would justify dismissal, it is inappropriate for Timeless to raise the argument

again as an affirmative defense.

> *Defendant's Response*

Timeless argues that there is a dispute as to whether the complaint states sufficient facts

to state a claim under the ADEA.  The only fact alleged is that Rex and Carlberg were requested

to give their ages.  Such a request is not improper.  Further, Rex was working two jobs and

worked up until the last two months of his life when illness prevented him from working.  The

complaint gives rise to a dispute whether the ADEA claim is supported by sufficient facts.

> *Discussion*

The Court previously denied a Rule 12(b)(6) motion from Timeless and determined that

the complaint adequately states a claim under Rule 8 for violation of the ADEA.  See Court's

Docket Doc. No. 15.  Nothing has changed from the time of that ruling.  As such, the complaint

continues to state a claim.  See id.  The Court will grant summary judgment on this affirmative

1  defense.[7]  See id.

2

3  **B.**  **Second & Eighth Affirmative Defenses – Statute of Limitations**

4       *Plaintiff's Argument*

5       The EEOC argues that 29 U.S.C. § 626, as amended by § 115 of the Civil Rights Act of

6  1991, incorporates the Supreme Court's holding that Title VII imposes no statute of limitations

7  period upon the EEOC.  This applies to ADEA claims brought by the EEOC.  Thus, these

8  affirmative defenses fail as a matter of law.

9       *Defendant's Response*

10      Timeless argues that 29 U.S.C. § 626(e) applies to the EEOC and thus, imposes a 90-day

11 statute of limitations on the agency to file suit once it has terminated proceedings.  Here, the

12 EEOC told Timeless in February 2008 that a lawsuit was forthcoming, yet no lawsuit was filed

13 until September, well later than 90 days.

14      *Discussion*

15      In pertinent part, 29 U.S.C. § 626(e) reads:

16      If a charge filed with the [EEOC] under this Act is dismissed or the proceedings
        of the [EEOC] are otherwise terminated by the [EEOC], the [EEOC] shall notify
17      the person aggrieved.  A civil action may be brought under this section by a
        person defined in section 11(a) [29 USC § 630(a)] against the respondent named
18      in the charge within 90 days after the date of the receipt of such notice.

19 29 U.S.C. § 626(e).

20      This Court is unaware of a Ninth Circuit opinion that directly addresses the issue of

21 whether § 626(e)'s 90-day limitations period applies to the EEOC.  One district court has found

22 that § 626(e)'s 90 day period applies to the EEOC.  McConnell v. Thomson Newspapers, 802

23 F.Supp. 1484, 1499-1500 (E.D. Tex. 1992).  However, *McConnell* appears to be a distinct

24 minority.  Most courts find that the § 626(e) limitations period does not apply to lawsuits filed by

25 the EEOC.  See EEOC v. Inc. Vill. of Valley Stream, 535 F. Supp.2d 323, 325 (E.D. N.Y. 2008);

26

27      [7]By granting summary judgment on this affirmative defense, the Court is not precluding arguments
   regarding "mitigation" or "back pay" as to Rex.  See Court's Docket Doc. No. 44 at 3:7-10.  Furthermore, summary
28 judgment on this affirmative defense has no effect on Timeless's ability to argue to the jury that it did not violate the
   ADEA.  See EEOC v. NCL Am., Inc., 536 F.Supp.2d 1216, 1224 (S.D. Cal. 2007).

1    EEOC v. Lennar Homes of Ariz., Inc., 2005 U.S. Dist. LEXIS 22305, *10-*11 (D. Ariz. Sept.

2    30, 2005); EEOC v. Venator Group, Specialty, Inc., 2002 U.S. Dist. LEXIS 1727, *5-*6 (S.D.

3    N.Y. Feb. 5, 2002); EEOC v. AT&T Co., 36 F. Supp. 2d 994, 995-97 (S.D. Ohio 1998); EEOC

4    v. Sara Lee Corp., 923 F.Supp. 994, 999 (W.D. Mich. 1995); Wilkerson v. Martin Marietta

5    Corp., 875 F.Supp. 1456, 1459-60 (D. Colo. 1995).  These courts generally rely on the legislative

6    history of § 626(e) specifically, and the ADEA in general, in reaching their conclusion.  See, e.g.,

7    AT&T Co., 36 F.Supp.2d at 995-97.  Timeless does not sufficiently explain why the Court

8    should follow *McConnell*.  In the absence of controlling authority, the Court finds the majority

9    approach persuasive.  Because the 90-day limitations period of § 626(e) does not apply to suits

10   by the EEOC, summary judgment on this affirmative defense is appropriate.

11

12   **C.**      **Third Affirmative Defense – Failure to Mitigate**

13            *Plaintiff's Argument*

14            The EEOC argues that, because it is a government agency, the defense of mitigation has

15   no application to it.  As to mitigation regarding Rex and Carlberg, no facts substantiate this

16   defense.  It is undisputed that both Rex and Carlberg continued to seek active employment after

17   Timeless did not hire them.  Because they sought employment, they did not fail to mitigate.

18            *Defendant's Response*

19            Timeless argues that victims of employment discrimination are under a duty to mitigate

20   their losses.  Where an employee has failed to mitigate, back pay may be reduced or forfeited.

21   As to Carlberg, the evidence shows that he stopped looking for work about a month after he filed

22   his application.  He was on social security disability before he applied, and remains on social

23   security disability to date.  Carlberg is not entitled to back pay from 2004 through the present.

24   As to Rex, the evidence adduced is that he worked until illness prevented him from working.

25   There is no proof that he suffered damages and no evidence regarding mitigation efforts.  Rex

26   failed to attend the conciliation meeting, and his failure may be viewed as a form of failure to

27   mitigate.  As to the EEOC, if they had been more prompt in their efforts, the claims for back pay

28   would have been significantly smaller, such that the case could have resolved.

1          *Discussion*

2          As the EEOC's reply memorandum makes clear, the EEOC's argument is that because

3   Rex and Carlberg continued to look for employment, they did not fail to mitigate.  See Court's

4   Docket Doc. No. 50 at 4:23-24.  The EEOC supports its argument through its proposed

5   undisputed fact that, "Both Rex and Carlberg continued to actively seek employment after 2004."

6   PUF 18.  That proposed fact is based on deposition testimony from Carlberg and Adam Nostrant

7   ("Nostrant"), who is Rex's stepson.  See id.  There are problems with the EEOC's position.

8          First, an ADEA claimant "must attempt to mitigate damages by exercising reasonable

9   care and diligence in seeking reemployment after termination."  Cassino v. Reichhold Chem.,

10  817 F.2d 1338, 1345 (9th Cir. 1987); Jackson v. Shell Oil Co., 702 F.2d 197, 201 (9th Cir. 1983).

11  The reasonableness of mitigation efforts depends upon the particular circumstances of the

12  plaintiff/claimant.  See EEOC v. Pape Lift, Inc., 115 F.3d 676, 684-85 (9th Cir. 1997).  Simply

13  asserting that Rex and Carlberg continued to look for work, without more, does not sufficiently

14  indicate "reasonable care and diligence."  See Cassino, 817 F.2d at 1345.

15         Second, the evidence cited by the EEOC does not show that Rex and Carlberg continued

16  to actively seek employment after 2004.  With respect to Carlberg, although he testified that he

17  sought employment with two nurseries and a bus company after his application with Timeless,[8]

18  see Carlberg Dep. 46:4-23, he also testified that the last time he "looked for jobs" was "probably

19  2005."  See Carlberg Dep. 13:10-16; see also PUF 7.4.  In other words, from 2005 to his

20  deposition in 2009, Carlberg did not attempt to find work.  The Court cannot find that this

21  testimony shows reasonable care and diligence as a matter of law.[9]  Summary judgment is

22  inappropriate.

23         As for Rex, the EEOC cites two excerpts from Nostrant's deposition.  See PUF 18.  Page

24  24 lines 12 through 25 is a discussion regarding papers in Nostrant's possession that may show

25

26  ─────────────

27         [8]Carlberg also testified that he did not apply for any cashier positions.  See Carlberg Dep. 47:6-8.

28         [9]In fact, the testimony as it stands indicates that from sometime in 2005 to the present, Carlberg exercised no diligence in seeking employment.

Rex's damages, and a statement that Nostrant has W2's from 2004 through 2007.[10]  However, there is no discussion as to what exactly those W2's reflect.  See Nostrant Dep. 24:24-25.  More importantly, the fact that W2's may *exist* for most of the relevant time period alone says nothing about the reasonableness of mitigation efforts, it merely shows that some income was earned.  Cf. Pape Lift, 115 F.3d at 684-85; Cassino, 817 F.2d at 1345.  The second excerpt runs from page 30 line 8, to page 32 line 24.  That section deals with whether Rex was working in the years 2006, 2007, and 2008.  See id. at 30:8-32:24.  Those sections establish that Nostrant thought that Rex was working in those years, but he does not know where Rex worked, he does not know if Rex was working full or part time, he does not know if Rex was working throughout those years, he would see Rex around 3 or 4 times a month from 2005 through 2007, and he testified with respect to 2005, "I wasn't the keeper of his hours.  I don't know."  Id. at 30:14-33:12.  Nostrant's testimony is far from certain.  The testimony states a general belief as to whether Rex worked and includes a significant number of "I don't know" answers.  There is a distinct lack of particulars and specific information.  A generalized belief that Rex worked, without more, does not show reasonable care and diligence as a matter of law.  The deposition excerpts are not a sufficient basis for the Court to grant summary judgment in the EEOC's favor.  Cf. Cassino, 817 F.2d at 1345.

Finally, Timeless's opposition argues that the EEOC's failure to promptly prosecute this case increased the amount of backpay that is potentially at issue.  It is true that the failure of an employee/applicant to mitigate his damages will limit the EEOC's ability to recover damages for that employee/applicant under the ADEA.  See Waffle House, 534 U.S. at 296-97.  However, the Court is aware of no authority that supports Timeless's argument that the EEOC itself must mitigate.  Timeless cites no authority that supports its argument, and it is the defendant's burden to establish mitigation.  See Cassino, 817 F.2d at 1345.  Timeless has not adequately developed this theory.  In the absence of authority, the Court will grant summary judgment in favor of the

---

[10]As part of Timeless's motion for summary judgment, Timeless states that the EEOC "could not produce" Rex's W2's for 2006, 2007, and 2008.  See Court's Docket Doc. No. 31-2 at 13 & n.8.  Only W2's from 2004 and 2005 have been submitted in connection with the parties' respective motions.

EEOC, to the extent that Timeless attempts to argue that the EEOC's failure to prosecute this case in a prompter fashion constitutes a failure to mitigate.

**D.      Fourth Affirmative Defense – Conditions Precedent**

*Plaintiff's Argument*[11]

The EEOC argues that it issued letters of determination that stated that relief was sought for Rex and Carlberg.  The EEOC offered to conciliate.  The parties held a conciliation conference on February 29, 2008.  Timeless rejected the EEOC's offer.  The evidence is undisputed that a conciliation effort was attempted, and suit was filed after the conciliation efforts failed.  Further, as supplemental briefing shows, additional conciliation/settlement efforts were made after February 29, 2008.  Finally, in response to supplemental briefing, the EEOC states that, given the position of the parties and the efforts that have been made, staying the action for further conciliation would be futile.

*Defendant's Opposition*

Timeless argues that the EEOC's conciliation efforts were to wait almost four years, hand Timeless and its new attorney a "draconian agreement," fail to work with Timeless, and then to file suit.  Specifically, Timeless was shown a typed agreement with blank spaces for dollar amounts.  Timeless was told that there was no room to negotiate liability, the only reason for conciliation was to determine how much money the EEOC was willing to accept, and no negotiation regarding other aspects of settlement would occur.  Other aspects of the settlement included requiring Timeless to hire a consultant to oversee its operation, frequent reports to the EEOC, and opening all of its books to the EEOC.  Further, Timeless was not allowed to take the conciliation agreement out of the EEOC office unless it was signed, and was told that if the agreement was not signed, the EEOC would ensure that the cost of litigation would exceed the

---

[11] The EEOC identifies four conditions precedent and argues that it has met all four conditions.  Timeless only responds to the conciliation condition.  Because Timeless did not address three of the conditions in its opposition, summary judgment is appropriate as to the EEOC's receipt of the charges, investigation of the charges, and reasonable cause determination.  See Shakur v. Schriro, 514 F.3d 878, 892 (9th Cir. 2008); Jenkins v. Cty. of Riverside, 398 F.3d 1093, 1095 n. 4 (9th Cir. 2005).

cost of settlement.  Additionally, in supplemental briefing, Timeless states that it is not amenable to the Court staying the matter for further conciliation.

### Conciliation/Settlement Efforts

On January 24, 2008, the EEOC sent letters to Timeless offering the opportunity to conciliate the claims of Rex and Carlberg.  See PUF 8.10; Plaintiff's Exs. 179, 180.

On February 29, 2008, an unsuccessful conciliation conference occurred.  See Plaintiff's Ex. 206; see also Shiralian Dec. ¶ 12.  On the same day, the EEOC sent a letter to Timeless offering to conciliate one more time.  See Plaintiff's Ex. 206.  In pertinent part, the letter: (1) made note of all parties' obligation to conciliate in good faith; (2) gave Timeless until March 14, 2008, in which to agree to further conciliation; and (3) recounted that, at conciliation the EEOC had explained that it was seeking back pay and non-monetary relief for Rex and Carlberg under the ADEA because they had not been hired due to their ages, the EEOC had shown several applications that referenced age, and the EEOC indicated that a number of other applications included dates of birth or comments regarding age.  Id.

On March 3, 2008, Timeless's counsel sent a letter in response.  See Garcia-Bautista Dec. Ex. 6.  The letter indicates that: (1) the EEOC refused to share findings and essentially wanted Timeless to take its word that discrimination occurred; (2) no evidence was presented that indicated age discrimination, and the EEOC refused to identify the name of Timeless's employee who allegedly mentioned age; (3) conclusory allegations of discrimination are insufficient; and (4) because of the "incredulous atmosphere" at the conciliation, another conciliation meeting would not be fruitful.  See id.  The letter concludes by stating that unless more information is provided, there is nothing further to discuss.  See id.

Between March 4, 2008, and August 17, 2008, it appears that some negotiations between the parties occurred.[12]  However, it is unknown what amount of contact occurred or what form the contact took.

On August 18, 2008, the EEOC sent a letter to Timeless's counsel.  See Garcia-Bautista

---

[12]It also appears that from March 4 to September 9, Timeless negotiated with a different EEOC attorney than the one who appeared at conciliation.

13

Dec. Ex. 7.  The letter states that it would provide copies, without the customary charge, of documents that Timeless had initially produced.  See id.  The letter also stated that Timeless's counsel would be communicating with Timeless about a settlement, but counsel had agreed in principal to settle with a consent decree.  See id.  Included in the decree would be efforts to recruit employees who are over 40, record keeping, age discrimination training, posting, and reporting to the EEOC regarding progress.  See id.  The letter states that there is an agreement to continue discussions once the attorneys had contacted the charging parties and corporate officers regarding a monetary settlement.  See id.

On September 3, 2008, the EEOC sent a letter to Timeless's counsel that purports to be a follow up to an August 25, 2008, telephone conversation.  See Garcia-Bautista Dec. Ex. 8.  The letter states that: (1) Timeless's counsel had agreed to injunctive relief and had offered to pay $5,000; (2) the sum of $5,000 was too small and that, excluding benefits and liquidated damages, lost wages totaled about $63,000;[13] (3) Timeless was willing to settle up to $7,500; (4) Timeless invited EEOC to seek headquarter approval for filing a suit; (5) before filing suit, the EEOC wanted to ensure that Timeless understood the EEOC's offer and explanation of settlement; and (6) "the EEOC's sole purpose at this point is to resolve this matter before proceeding to litigation."  Id.  The letter explains the injunctive relief sought as recruitment of 40-plus-year-old employees, training on age discrimination, reviewing and ensuring that Timeless has policies against age discrimination, a notice posting, and standardized hiring procedures.  Id.  The letter explains that damages totaling $150,000 may occur, other persons who have been discriminated against may be sought, and this would exceed a purported $20,000 in defense expenses.  Id.  The letter further explains that if bankruptcy concerns are at issue, the EEOC is willing to look at financial records in order to "reach a different income sensitive amount."  Id.  Finally, the letter provides a counter-offer of $48,000.  Id.

On September 9, 2008, Timeless's counsel sent a reply letter.  See Garcia-Bautista Dec. Ex. 9.  The letter stated that the EEOC's proposal was not acceptable, but did agree that the

_____

[13]The EEOC stated that this figure was based on lost wages from July 2004 to December 2006, at a wage of $10/hour.  See Garcia-Bautista Dec. Ex. 8.  The figure also included interest, and subtracted other income.  See id.

mutual purpose was to avoid litigation.  See id.  The letter described confusion since Timeless

employs many employees over the age of 40, but concluded by saying, "none of the injunctive

requests burden my client, as you are essentially requiring him to continue the status quo."  Id.

The letter discusses liability and damages, and then concludes by stating that $7,500 is the

bottom line.  See id.

On September 29, 2008, the EEOC filed this lawsuit.  See Court's Docket Doc. No. 1.

*Legal Standard*

The ADEA mandates that the EEOC notify potential employer-defendants and seek to

eliminate alleged unlawful practices through "informal methods of conciliation, conference, and

persuasion."  29 U.S.C. § 626(d); EEOC v. Pan American World Airways, Inc., 897 F.2d 1499,

1505 n.5 (9th Cir. 1990).  One court has characterized conciliation as "notably an assignment to

be played by ear for it requires flexibility and responsiveness to the attitudes of the other

participants and to the developing positions taken by them in conversations."  Brennan v. Ace

Hardware Corp., 495 F.2d 368, 376 (8th Cir. 1974).  "Conciliation is a jurisdictional condition

precedent to suit by the EEOC."  EEOC v. Bruno's Restaurant, 13 F.3d 285, 288 (9th Cir. 1992);

EEOC v. Pierce Packing Co., 669 F.2d 605, 608 (9th Cir. 1982).  The EEOC must conciliate in

good faith.  EEOC v. Prudential Fed. Savs. & Loan Assn., 763 F.2d 1166, 1169 (10th Cir. 1985).

When the EEOC fails to conciliate in good faith, a court may stay the proceedings to allow for

conciliation or dismiss the case.  See EEOC v. Asplundh Tree Expert Co., 340 F.3d 1256, 1261

(11th Cir. 2003); Pierce Packing, 669 F.2d at 608-09; Brennan, 495 F.2d at 376.  If an employer

is "unwilling to engage in any discussion regarding [a] charge" following invitations to

conciliate, the obligation to attempt a good faith conciliation will be satisfied.  See Bruno's, 13

F.3d at 289; Prudential Fed., 763 F.2d at 1169; Marshall v. Sun Oil Co. (Delaware), 605 F.2d

1331, 1337 (5th Cir. 1979).

*Discussion*

There is a split among the circuits regarding the proper standard for reviewing whether

the EEOC has attempted to conciliate in good faith.  See EEOC v. Supervalu, Inc., 674 F. Supp.

2d 1007, 1008 n.1 (N.D. Ill. 2009).  One approach is highly deferential and focuses on whether

the EEOC attempted to conciliate, the "form and substance of the EEOC's conciliation proposals are within the discretion of the EEOC and are not subject to judicial second-guessing." EEOC v. Keco Indus., Inc., 748 F.2d 1097, 1102 (6th Cir. 1984); EEOC v. Paramount Staffing, Inc., 601 F.Supp.2d 986, 990 (W.D. Tenn. 2009).  The other approach posits that the EEOC must meet three requirements to fulfill its conciliation duty:  (1) outline to the employer the reasonable cause for its belief that the ADEA has been violated; (2) offer an opportunity for voluntary compliance; and (3) respond in a reasonable and flexible manner to the reasonable attitudes of the employer.  See EEOC v. Asplundh Tree Expert Co., 340 F.3d 1256, 1259 (11th Cir. 2003); EEOC v. Johnson & Higgins, Inc., 91 F.3d 1529, 1534 (2d Cir. 1996); EEOC v. Klingler Electric Corp., 636 F.2d 104, 107 (5th Cir. 1981).  To the Court's knowledge, the Ninth Circuit has not addressed this issue, and some courts within the Ninth Circuit have adopted the Keco approach, e.g. EEOC v. California Psychiatric Transitions, Inc., 644 F.Supp.2d 1249, 1273 (E.D. Cal. 2009), while others are in line with Klingler.[14]  E.g. EEOC v. Arizona, 824 F.Supp. 898, 901 (D. Ariz. 1991).  Based on the evidence presented to the Court, the result of this motion will not change, irrespective of the approach utilized.  Therefore, the Court will not choose which standard to adopt.

Under the Keco approach, there is no doubt that the EEOC met that standard.  There is no dispute that a face to face conciliation meeting occurred on February 29, 2008.  Further, in the follow up letter sent by the EEOC to Timeless, the EEOC offered to continue to conciliate and stated that all parties are to conciliate in good faith.  See Plaintiff's Ex. 206.  The evidence shows that the parties continued to negotiate into September 2008.  This evidence is sufficient to establish a good faith conciliation under Keco.  See Keco, 748 F.2d at 1102.

Under the Klingler approach, the Court would be compelled to conclude that no good faith conciliation occurred on February 29, 2008.  It appears that the first and second Klingler

---

[14]The approach of the Tenth Circuit is not clear.  One case is in line with Keco, see EEOC v. Zia Co., 582 F.2d 527 (10th Cir. 1978), while the Second Circuit in Johnson & Higgins characterized EEOC v. Prudential Fed. Savs. & Loan Assn., 763 F.2d 1166 (10th Cir. 1985) as consistent with its approach.  Prudential Fed. Savs. stated that conciliation involved two parties, and that the EEOC's conciliation efforts would be sufficient "so long as [the EEOC] makes a sincere and reasonable effort to negotiate by providing the defendant an adequate opportunity to respond to all charges and negotiate possible settlements."  Prudential Fed., 763 F.2d at 1169.

considerations were met, either through the conciliation meeting or the same-day follow up letter, albeit not to the satisfaction of Timeless.  The EEOC explained that it believed that Rex and Carlberg did not get hired because of age discrimination, the EEOC showed Timeless applications that had notations regarding age, and the EEOC indicated that a number of applications had comments regarding age.  Cf. EEOC v. Hibbing Taconite Co., 266 F.R.D. 260, 274 (D. Minn. 2009) (following *Klingler* approach and holding that conciliation "does not necessitate that the EEOC disclose all of the underlying evidence or information to the employer," rather  conciliation "requires that the EEOC provide the employer with sufficient information to assure that the employer knows the basis of the charge, and is able to participate in the conciliation process fully.").  The EEOC then gave Timeless the opportunity to sign settlement agreements.  However, the problem is the third *Klingler* consideration.  The uncontradicted declarations of Timeless's officer and attorney indicate an inexplicable rigidity, an unwillingness to materially discuss the substantive allegations, and unreasonable demands by the EEOC – the antithesis of a good faith conciliation is reflected.  See Shiralian Dec. ¶¶ 12-14; Kharazi Motion Dec. ¶¶ 17-18; Kharazi Opposition Dec. ¶¶ 10-13.  In other words, Timeless's declarations show that the EEOC failed to respond to Timeless at the conciliation "in a reasonable and flexible manner to the reasonable attitudes of the employer."  Klingler, 636 F.2d at 107.  Nevertheless, the conciliation session in February 2008 was not the only attempt to discuss and settle this dispute.

From the evidence submitted, it is apparent that the parties continued to discuss possible resolutions for Rex and Carlberg's respective charges.  See Garcia-Bautista Dec. Exs. 7, 8, 9.  Of particular importance are the September 3, 2008, letter from the EEOC and Timeless's September 9, 2008, reply.  As outlined above, these correspondences show that negotiations had been partially successful in that the parties were in agreement about injunctive relief.  See id. at Exs. 8, 9.  The only "hitch" appears to have been the dollar amount that Rex and Carlberg were to receive as compensatory damages.  The EEOC explained its position on the dollar amount, stated that if bankruptcy was a concern that a more "sensitive amount" could be reached, and then lowered their demand by $15,000, or roughly 24%.  See id. at Ex. 8.  The EEOC explained

that it was continuing the negotiation efforts, despite Timeless stating that the EEOC should receive headquarters's approval for a lawsuit, in order to avoid litigation.  See id.  Timeless did not accept the EEOC's counter-offer, did not offer further explanation regarding its offer of $7,500, and did not specifically critique either the $63,000 offer or the $48,000 counteroffer. Once Timeless reiterated that $7,500 was "the bottom line and no more," id. at Ex. 9, the EEOC was under no obligation to make further conciliation efforts.  See Bruno's, 13 F.3d at 289; Prudential Fed., 763 F.2d at 1169; Marshall, 605 F.2d at 1337.  With the September 3, 2008, letter, the EEOC responded to Timeless "in a reasonable and flexible manner to the reasonable attitudes of the employer."  Klingler, 636 F.2d at 107.  That a dollar amount could not be agreed upon is not fatal.

The EEOC has met its burden of showing good faith conciliation efforts.  Summary judgment in favor of the EEOC is appropriate.

**E.      Fifth Affirmative Defense – Misconduct**

The EEOC argues that "misconduct" is not a cognizable affirmative defense under the ADEA.  Further, there is no evidence to support any culpability.

*Defendant's Response*

Timeless argues that Rex and Carlberg's application "included incorrect and somewhat misleading information."  Court's Docket Doc. No. 44 at p.7:2-3.  Rex did not fully disclose that he was employed full time by another gas station.  Carlberg failed to disclose that he had been laid off from his truck driving job.  Carlberg also failed to disclose that he had applied for and was receiving social security disability payments, which would have precluded him from working.  Finally, the EEOC refused to discuss the merits of the case at conciliation and waited four years to bring suit.

*Discussion*

It is not clear to the Court that Timeless has alleged a valid defense.  Timeless cites no authority that acknowledges such a defense or discusses the parameters of a "misconduct" defense in an ADEA setting.  In fact, no cases or authority of any kind are cited in the pertinent

section of Timeless's opposition.

With respect to the EEOC, the argument raised by Timeless rests entirely on conciliation. Attempting to characterize the EEOC's conduct during conciliation as "misconduct" is a minor variation of Timeless's prior arguments, and the Court has already addressed conciliation.

With respect to Rex, it is not clear that Rex failed to disclose that he worked "full time" because no evidence is cited in support of this assertion.[15]  Assuming that Rex worked "full time," the Court does not see how an alleged failure by Rex to disclose that information is a defense to anything.  Rex's failure to disclose does not affect whether Timeless engaged in age discrimination, nor does his failure to disclose his complete employment status affect the damages available.[16]

With respect to Carlberg's social security benefits/disability status, the Court sees the same problems as with Rex.  Carlberg's failure to disclose does not affect whether Timeless engaged in age discrimination, nor does his failure to disclose his social security status effect the damages available.[17]  As for Carlberg's failure to disclose being laid off from his truck driving position, the evidence does not support Timeless's assertion.  Carlberg testified that he "quit" that position, not that he was "laid off."  See Carlberg Dep. at 10:9-25.  However, even if Carlberg was "laid off," how that information is relevant, or how the failure to disclose that information is relevant, is nowhere explained by Timeless.

Timeless has failed to adequately explain its "misconduct" defense, both in the general context of the ADEA and the specific factual setting of this case.  Summary judgment in favor of the EEOC is appropriate.[18]

---

[15]Rex's application reads that he was currently employed as a cashier at a gas station.  See Defense Ex. B.

[16]Rex's actual employment status might be relevant to the amount of damages suffered and/or mitigation. However, the failure to *disclose* to Timeless his employment status would be irrelevant to the damages issue.

[17]Assuming that Carlberg's actual social security status might affect the damages available, the failure to *disclose* that information to Timeless would be irrelevant to the damages issue.

[18]Summary judgment on this affirmative defense is based on the alleged "failure to disclose" certain information. The grant of summary judgment on the "misconduct" defense is not intended as a grant of summary judgment on the issue of mitigation or whether particular types of damages are unavailable as a matter of law.

**F.**     **Sixth Affirmative Defense – Impossibility**

The EEOC argues that the defense of "impossibility" is in the nature of a contract defense and has no application to this case.  Timeless responds that it has determined that this affirmative defense does not apply in this case.  <u>See</u> Court's Docket Doc. No. 44 at 7:15-17.  In light of Timeless's concession, the Court will grant summary judgment.


**G.**     **Seventh Affirmative Defense – _In Pari Delicto_**

The EEOC argues that the defense of _in pari delicto_ is a contractual defense that has no application to this case.  Timeless responds that it has determined that this affirmative defense does not apply in this case.  <u>See</u> Court's Docket Doc. No. 44 at 7:19-21.  In light of Timeless's concession, the Court will grant summary judgment.


**H.**     **Ninth Affirmative Defense – Reservation of Affirmative Defenses**

_Plaintiff's Argument_

The EEOC argues that the reservation of affirmative defenses is not supportable under Rule 8(a)(2) and fails to give notice under Rule 8(a).  Other courts have granted summary judgment on identical reservations/defenses.[19]

_Defendant's Response_

Timeless responds that the ninth affirmative defense is simply a reservation that informs the parties that other affirmative defenses may be available as discovery progresses.

_Discussion_

A "reservation of affirmative defenses" is not an affirmative defense.  In light of Rule 15, the Court does not see the propriety of Timeless's reservation.  Rule 15 is the procedural mechanism that parties must follow in order to amend their pleadings,[20] and Rule 15 does not

---

[19]The EEOC also makes an argument against the defense of laches under this section.  The issue of laches is raised in defendant's summary judgment motion, and the EEOC's argument in its own summary judgment motion is identical to the argument it raised in opposition to Timeless's motion.  Because laches is not pled under this affirmative defense, the Court will address laches in its discussion of Timeless's motion.

[20]An answer to a complaint is a "pleading."  <u>See</u> Fed. R. Civ. Pro. 7(a)(2).

require a defendant to "expressly reserve" unnamed affirmative defenses in its answer.  See Fed.
R. Civ. Pro. 15.  It is not clear that Timeless's reservation has any effect on this case.
Nevertheless, because it is the subject of a summary judgment motion and was pled in the
answer, the Court will grant summary judgment in favor of the EEOC.[21]   Cf. EEOC v. NCL Am.,
Inc., 536 F.Supp.2d 1216, 1226 (S.D. Cal. 2007) (granting summary judgment on the affirmative
defense of "reservation of affirmative defenses" because the defense was vague, not pled in
accordance with Rule 8, and sufficient time for discovery had elapsed).

## II.    DEFENDANT'S MOTION

## A.    Conciliation

Timeless moves for summary judgment on the issue of good faith conciliation.  However,
as discussed above, the EEOC met its obligation to conciliate in good faith, albeit over a course
of months and through a series of telephone calls and written correspondences.  Summary
judgment in favor of Timeless is not appropriate.

## B.    Rule 25 In Relation To James Rex

*Defendant's Argument*

Timeless argues that all claims regarding Rex should be dismissed because Rex died in
December 2008, yet no one has sought to substitute in his place.  Rule 25 provides for 90 days in
which to file a motion for substitution.  Rule 25 also provides that the failure to file such a
substitution requires dismissal of the decedent's claims.

*Plaintiff's Opposition*

The EEOC argues that it is bringing suit on behalf of Rex and to vindicate the public
interest.  In age discrimination cases, once the EEOC files suit, individuals such as Rex may no
longer file their own lawsuits.  The EEOC states that it may continue to represent Rex.  Because
the ADEA is remedial in nature, an ADEA claim survives a claimant's death.

---

[21] The Court emphasizes that its ruling on this "affirmative defense" is intended to have no effect on the
currently pending motion to amend, nor does it have any effect on the affirmative defense of laches.  Rule 15, not the
outcome of the EEOC's motion on the "reservation affirmative defense," governs Timeless's motion to amend.

1       *Legal Standards*

2       Rule 25(a) reads in part:

3       If a party dies and the claim is not extinguished, the court may order substitution
of the proper party.  A motion for substitution may be made by any party or by the
4       decedent's successor or representative.  If the motion is not made within 90 days
after service of a statement noting the death, the action by or against the decedent
5       must be dismissed.
. . .
6

7       A motion to substitute, together with a notice of hearing, must be served on the
parties as provided in Rule 5 and on nonparties as provided in Rule 4.  A
8       statement noting death must be served in the same manner.  Service may be made
in any judicial district.

9   Fed. R. Civ. Pro. 25(a)(1), (3).  The Ninth Circuit has explained that Rule 25(a)(1) requires two

10   affirmative steps in order to trigger the running of the 90 day time period:  (1) a party must

11   formally suggest the death of the other party upon the record; and (2) the suggesting party must

12   serve other parties and nonparty successors or representatives of the deceased with a suggestion

13   of death.  Barlow v. Ground, 39 F.3d 231, 233 (9th Cir. 1994); Barrett v. Negrete, 2009 U.S.

14   Dist. LEXIS 106733, *2 (S.D. Cal. Nov. 16, 2009); Colon v. Home Depot U.S.A., Inc., 2009

15   U.S. Dist. LEXIS 40914, *2-*3 (E.D. Cal. May 13, 2009).  The 90 day time period is not

16   triggered "unless a formal suggestion of death is made on the record, regardless of whether the

17   parties have knowledge of a party's death," and the "mere reference to a party's death in court

18   proceedings or pleadings is not sufficient . . . ."  Grandbouche v. Lovell, 913 F.2d 835, 836 (10th

19   Cir. 1990); Colon, 2009 U.S. Dist. LEXIS 40914 at *3; see also Younts v. Fremont County, 370

20   F.3d 748, 752 (8th Cir. 2004); Barlow, 39 F.3d at 233 (citing with approval *Grandbouche*).

21       Also, in the absence of an express contrary intent, federal common law determines

22   whether a federal claim/cause of action survives the death of a claimant.  See United States v.

23   NEC Corp., 11 F.3d 136, 137 (11th Cir. 1993); Smith v. Department of Human Servs., 876 F.2d

24   832, 834 (10th Cir. 1989); Heikkila v. Barber, 308 F.2d 558, 561 (9th Cir. 1962).  Under federal

25   common law, claims that are remedial in nature survive the claimant's death, while claims that

26   are penal in nature do not survive.  See NEC, 11 F.3d at 1137; Smith, 876 F.2d at 835; United

27   States ex rel Harrington v. Sisters of Providence in Ore., 209 F.Supp.2d 1085, 1087 (D. Or.

28   2002).  Claims under the ADEA for "reinstatement, back-pay, and other benefits" are "remedial

in nature and thus, survive the claimant's death." Smith, 876 F.2d at 835-37; Kettner v. Compass Group USA, Inc., 2008 U.S. Dist. LEXIS 106990, *31 (D. Minn. July 8, 2008); Kulling v. Grinders for Indus., 115 F.Supp.2d 828, 849-50 ( E.D. Mich. 2000).  However, claims for ADEA "liquidated damages" are considered "penal" or "punitive" in nature and thus, do not survive the claimant's death.  See Smith, 876 F.2d at 835-37; Kettner, 2008 U.S. Dist. LEXIS 106990 at *31; Kulling, 115 F.Supp.2d at 845-46, 850; Hawes v. Johnson & Johnson, 940 F.Supp. 697, 702-03 (D. N.J. 1996).

### Discussion

The EEOC brought this lawsuit on behalf of Rex and Carlberg, as well as the public interest.  See EEOC v. Hacienda Hotel, 881 F.2d 1504, 1519 (9th Cir. 1989).  "An individual's right to sue [under the ADEA] is extinguished . . . if the EEOC institutes an action against the employer."  Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 27 (1991) (citing 29 U.S.C. 626(c)(1)); see Vines v. Univ. of La., 398 F.3d 700, 707 (5th Cir. 2005); EEOC v. Pan Am. World Airways, Inc., 897 F.2d 1499, 1505-07 (9th Cir. 1990).  When the EEOC filed suit, it terminated Rex's ability to bring his own suit.  See id.  Further, although the EEOC is suing in part to obtain relief on behalf of Rex, Rex is not a plaintiff in this action.  Under these circumstances, it would appear that Rule 25 has no application since Rex was not a plaintiff and Rule 25 applies "when a party dies."  Fed. R. Civ. Pro. 25(a)(1).

Assuming that Rule 25 may have some application, there has been no formal "suggestion of death" filed on the docket by any party.  Because a formal "suggestion of death" must be filed with the Court before the 90 day time period is triggered, the 90 day time period never commenced in this case.  See Barlow, 39 F.3d at 233; Grandbouche, 913 F.2d at 836; Barrett, 2009 U.S. Dist. LEXIS 106733 at *2.  Summary judgment on all claims regarding Rex and Rule 25(a)(1) is inappropriate.

However, the EEOC seeks liquidated damages on behalf of Rex.  Rex's death means the termination of his claim for liquidated damages.  See Smith, 876 F.2d at 835-37; Kulling, 115 F.Supp.2d at 845-46, 850.  Since the EEOC is suing in a representative capacity, see Vines, 398 F.3d at 707, the Court sees no grounds for allowing the EEOC to obtain liquidated damages on

behalf of the deceased Rex, when Rex's death would otherwise terminate his/his estate's ability

to obtain ADEA liquidated damages.  See Smith, 876 F.2d at 835-37; Kulling, 115 F.Supp.2d at

845-46, 850; cf. EEOC v. Waffle House, Inc., 534 U.S. 279, 296-97 (2002) ("If, for example,

[Baker] had failed to mitigate his damages, or had accepted a monetary settlement, any recovery

by the EEOC would be limited accordingly.").  The Court will grant summary judgment in favor

of Timeless with respect liquidated damages on behalf of Rex.  See Smith, 876 F.2d at 835-37;

Kulling, 115 F.Supp.2d at 845-46, 850; Kettner, 2008 U.S. Dist. LEXIS 106990 at *31; Hawes,

940 F.Supp. at 702-03.


**C.      Charging Parties' Damages**

*Defendant's Argument*

Timeless argues that an essential element of an ADEA claim is damages.  However, Rex

worked until the day his illness disabled him from doing so.  Rex made about $8,300 in 2004,

and about $10,300 in 2005.  Although income for subsequent years is unknown because the

EEOC could not produce Rex's W2 forms, it appears that, at minimum wage (which is about

what Timeless was offering to pay), Rex could not have made more than he already made at his

other jobs.  As for Carlberg, he filed for SSI benefits well before he applied for his job.  As part

of his SSI benefits, he claimed to be unable to work.  Carlberg cannot claim disability on one

hand, and loss of opportunity to work on the other.  The charging parties suffered no damages.

*Plaintiff's Opposition*

The EEOC argues that whether Rex and Carlberg suffered damages is irrelevant to the

public interest aspect of this case.  The EEOC seeks injunctive remedies as a result of Timeless's

practices.  Timeless's president has admitted that Timeless does not do training regarding age

discrimination and does not have written discrimination policies, and former manager Rafayelyan

confirmed he was unaware of discrimination policies and received no training.  With respect to

Carlberg, he was unemployed and continued to seek employment until 2005.  Even if he received

social security benefits, such benefits cannot be set off against backpay awards.  With respect to

Rex, he did not make as much as a full time cashier with Timeless (which would have been

24

$8.00/hour or $16,000/year)[22] because in 2004, he earned roughly $8,000.  At the least, these facts establish a question of fact as to damages.

*Discussion*

1.    Rex

With respect to Rex, there is no dispute that Rex worked until mid to late 2008, see PUF 7.5, Rex's 2004 W2 form indicates income of about $8,300.00, see DUF 34; PUF 7.6, Rex's 2005 W2 form indicates income of about $10,300.00, see DUF 35; PUF 7.7, and cashiers at Timeless earned between $8.00 and $8.50 per hour in 2004.  See Rafayelyan Dep. Vol. I at 78:1-4.  The EEOC is correct that a wage of $8.00 per hour, assuming a working year of 2000 hours, yields a yearly wage of $16,000 per year.  Obviously, $16,000 is more than Rex's 2004 income and 2005 income.[23]  Timeless's reply memorandum does not address the issue of damages, including the propriety of assuming an $8.00 per hour wage or an annual income of $16,000 under that wage.  Because $16,000 is greater than the incomes earned by Rex in 2004 and 2005, summary judgment on this issue is not appropriate.

2.    Carlberg

The same wage analysis is true of Carlberg, except the point is starker.  It appears that Carlberg did not work from the time of his application with Timeless to the present.  Any amount of wages that would have been earned by Carlberg at Timeless would be greater than $0.

However, resolution of Timeless's argument that Carlberg had filed for social security disability benefits and claimed to be disabled is not as straightforward.  A person is entitled to

---

[22] The Court notes that the $8.00/hour wage urged by the EEOC in this motion (which is consistent with Rafayelyan's testimony, see Rafayelyan Dep. Vol. I at 78:1-4) is less than the $10.00/hour wage urged by the EEOC in the August/September 2008 negotiations with Timeless.

[23] To the extent that Timeless is arguing that Rex and Carlberg would have made minimum wage, the result would not change.  From 2004 through  2006, the minimum wage in California was $6.75/hour.  8 Cal. Code. Reg. § 11040(4); Solis v. Best Medical Grp., 2010 U.S. Dist. LEXIS 45780, *40-*41 & n.14 (E.D. Cal. May 3, 2010); Medepalli v. Maximus, Inc., 2008 U.S. Dist. LEXIS 28509, *14 (E.D. Cal. April 8, 2008).  A wage of $6.75/hour, again assuming a working year of 2000 hours, yields a yearly wage of $13,500.  Obviously, $13,500 is more then Rex's 2004 income and 2005 income.  Additionally, Timeless has not submitted evidence that $6.75 was the wage for cashiers in 2004.

social security disability benefits if the "disability"[24] is "of such severity that he is not only

unable to do his previous work but cannot, considering his age, education, and work experience,

engage in any other kind of gainful work which exists in the national economy . . . ."[25]   42 U.S.C.

§ 423(d)(2)(A).   The EEOC has cited portions of Carlberg's deposition in which Carlberg

indicates that he received disability benefits from the social security administration from 2004

through 2007, but from 2007 to the present he received "straight social security."   See Carlberg

Dep. at pp. 28, 43, 45.   Carlberg states that it was his belief that he could work part time despite

receiving disability benefits.   See id. at 43:23-44:6.   Carlberg also testified that he cannot

remember whether he received social security disability benefits before or after he applied with

Timeless.   See id. at 45:8-10.

Carlberg's testimony is significant.   The general rule is that "an employer is not liable for

backpay during periods that an improperly discharged employee is unavailable for work due to a

disability."   Canova v. NLRB, 708 F.2d 1498, 1505 (9th Cir. 1983); see Lathem v. Department of

Children & Youth Servs., 172 F.3d 786, 794 (11th Cir. 1999); Starceski v. Westinghouse Elec.

Corp., 54 F.3d 1089, 1101 (3d Cir. 1995); Saulpaugh v. Monroe Cmty. Hosp., 4 F.3d 134, 145

(2d Cir. 1993); McKenna v. City of Philadelphia, 636 F. Supp. 2d 446, 465 (E.D. Pa. 2009);

Shomide v. ILC Dover, Inc., 521 F. Supp. 2d 324, 334-35 (D. Del. 2007).   However, where the

defendant's discriminatory conduct caused the disability, back pay is available.   Lathem, 172

F.3d at 794; McKenna, 636 F.Supp.2d at 465.   "The rationale behind this rule is that, because

back pay is a compensatory remedy intended to restore the plaintiff to the position that he would

have been in had he not been discriminated against, a plaintiff should not be able to receive back

pay for a period when he was unable to work for reasons unrelated to the defendant's conduct."

McKenna, 636 F.Supp.2d at 465; see also Saulpaugh, 4 F.3d at 145.

---

[24]The Social Security Act defines "disability" as "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A).

[25]The Social Security Act clarifies that "'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."   42 U.S.C. § 423(d)(2)(A).

Here, that Carlberg collected social security disability benefits shows that he has

successfully contended and shown that he has a "disability" and that his disability was so severe

that he could not perform work in the national economy.[26]  See 42 U.S.C. § 423(d)(2)(A).

Although it is unknown how or why Carlberg was (or is) disabled, it is unclear how his disability

could have been caused by Timeless's failure to hire him.  The evidence suggests that the

availability of back pay from 2004 to 2007 should be limited.[27]  See Lathem., 172 F.3d at 794;

Starceski, 54 F.3d at 1101; Saulpaugh, 4 F.3d at 145; Canova, 708 F.2d at 1505; McKenna, 636

F.Supp.2d at 465; Shomide, 521 F.Supp.2d at 334-35.

However, Carlberg stated that he could not recall if he received disability benefits prior to

or after his July 2004 application with Timeless.  If Carlberg received the benefits after his July

2004 application with Timeless, then back pay would be available at least from July 2004 to

whatever later month in 2004 he began receiving disability payments.

Even if Carlberg received disability benefits prior to his July 2004 application, the Court

is not convinced at this point that no back pay would be available.  The Social Security Act

"clearly permits individuals to receive benefits while engaged in a period of paid 'trial work.'"

Mohammed v. Marriot Int'l, 944 F.Supp. 277, 283 (S.D. N.Y. 1996).  42 U.S.C. § 422(c) allows

a social security disability beneficiary to attempt to return to work, that is have a period of "trial

work," but the "trial work" may not exceed nine months over a period of 60 months.  See 42

U.S.C. § 422(c); see also Flaten v. Secretary of HHS, 44 F.3d 1453, 1462 (9th Cir. 1995); Conley

v. Bowen, 859 F.2d 261, 262 (2d Cir. 1988); Henriquez v. Astrue, 482 F.Supp.2d 50, 59 (D.

Mass. 2007).  Since the Social Security Act allows a disability beneficiary to have up to nine

months of "trial work," and it is the Social Security Act that provided Carlberg disability

benefits, it seems possible that 42 U.S.C. § 422(c) could have an effect on the damages available

---

[26]Further, it cannot be seriously disputed that the job of "cashier" is a job that exists in significant numbers in both Fresno and the country.  Cf. 42 U.S.C. § 423(d)(2)(A).  As such, working as a cashier is contrary to an entitlement to disability benefits under 42 U.S.C. § 423(d)(2)(A).

[27]The EEOC cites Maxfield v. Sinclair, Int'l, 766 F.2d 788 (3d Cir. 1985) for the proposition that social security benefits cannot off-set an award of damages under the ADEA.  However, Maxfield did not involve social security disability benefits, rather it involved social security retirement benefits.  See Maxfield, 766 F.2d at 793, 795; cf. Starceski, 54 F.3d at 1101; McKenna, 636 F.Supp.2d at 465.

in this case. However, without briefing from the parties regarding Carlberg's disability benefits and 42 U.S.C. § 422(c)'s effect, if any, on this case, the Court will not resolve the issue.

At this point, the Court does not believe that sufficient briefing has been done regarding the damages available to Carlberg. Carlberg's testimony at this point suggests that he is not entitled to backpay from some amount of time between 2004 and 2007. However, that is as far as the evidence goes. The Court cannot grant summary judgment because there are too many unknowns. Summary judgment on the issue of Carlberg's damages will be denied.

**D.**    **Disparate Treatment Because Of Age**

*Defendant's Argument*[28]

Timeless argues that there is no direct evidence of age discrimination and there is insufficient indirect evidence. From March 2004 to August 2004, all applicants had placed either their birth date or their age on the application, and Timeless's management indicates that this may have been done because of the need to hire persons over 21, due to EZ Trip selling alcohol and tobacco.

With respect to Carlberg, he had no prior cash register experience, so he was not qualified. All witnesses testified that the job of cashier was offered to those with experience. There is no indication that Carlberg was singled out due to his age.

With respect to Rex, he was not hired because, at the time of his application, he was working two jobs and not immediately available. The evidence shows that the people who were hired in June and July 2004 generally started the day after they filed an application, although one person started three days later and another started five days later. However, Rex indicated on his application that he was not available for two weeks.

Timeless argues that it seeks out more mature employees and, because it does not offer insurance benefits for cashiers, it has no incentive to discriminate against older applicants.

---

[28]Timeless makes an argument against a disparate impact theory by pointing to numerous persons who were either hired or are currently employed and over the age of 40. However, there is no indication that the EEOC is pursuing a disparate impact theory. Accordingly, the Court focuses only on the disparate treatment briefing.

1    Further, because of the high number of applications, it is likely that Rex and Carlberg's

2    applications were not even reviewed.

3        *Plaintiff's Opposition*

4        The EEOC argues that there is a material dispute regarding the qualifications for the

5    cashier position.  Rafayelyan stated in his declaration that he was looking for cashier experience

6    and immediate availability.  However, there are no written documents that establish the

7    qualifications, and what constitutes sufficient experience is a subjective criteria that is not

8    suitable for determination on summary judgment.  Also, some of the applicants who were  hired

9    were not immediately available and some of the applicants did not have previous cashier

10   experience.[29]  The other elements of a prima facie case are met because Rex and Carlberg were

11   over age 40, they were neither interviewed nor hired, and persons significantly younger than

12   themselves were hired (people in their teens, twenties and thirties).  The EEOC argues that its

13   prima facie case is not affected by the individuals identified by Timeless who were hired in 2004

14   and who were at least 40 years old.  Those individuals are not comparable because they either

15   were not cashiers, were not hired by Rafayelyan, or the difference in age in comparison to Rex

16   and Carlberg is substantial.

17       The EEOC also argues that Timeless's identified reasons for not hiring Rex and Carlberg

18   are pretextual.  First, Rafayelyan admitted that a person's appearance was important in a hiring

19   decision.  Rafayelyan required that age be written so that he exclude those who were too old and

20   did not fit the proper appearance.  Also, if it was truly necessary that an applicant be at least 21

21   years old, a notation that the person was over 21, instead of the precise age, would suffice.

22       Second, Timeless has offered shifting reasons for its failure to hire Rex and Carlberg.

23   Rafayelyan made no mention of availability as a hiring criteria in his deposition, but did so in his

24   declaration.  Also, Timeless's representations to the EEOC and Rafayelyan's deposition

25   indicated that they never asked for age, but Shiralian now admits that ages were obtained from

26   March 2004 to August 2004, and Shiralian admits asking for age in his declaration.  Also, only

27

28   ────────────

[29]The EEOC also argues that Carlberg had cashier experience.  However, that experience was when he was
12 years old, <u>see</u> Carlberg Dep. 13:25-14:2, and Carlberg's application reflects no experience.  <u>See</u> Defense Ex. C.

the convenience store (EZ Trip) sells alcohol and tobacco, not the Plaza.  Thus, it is not necessary for Timeless to know the age of every applicant.

Third, Rafayelyan conceded that Marisela G. and Steve F., cashiers whom he hired in 2004, had no cashier experience.  This is contrary to the stated requirement that prior cashier experience is important.

Fourth, Rafayelyan did not identify immediate availability as a requirement in his deposition and said that whether someone already had a job was not important.  Also, Alicia Corona was hired despite informing Rafayelyan that she needed to give two weeks notice, and Jose Troncoso did not start until two weeks after his application.  Also, Rafayelyan hired three individuals after July 20 (the date that Rex stated that he could begin).

*Legal Standard*

"Under the ADEA, employers may not 'fail or refuse to hire . . . any individual [who is at least forty years old] or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.'"  Enlow v. Salem-Keizer Yellow Cab Co., 389 F.3d 802, 811 (9th Cir. 2004) (quoting 29 U.S.C. § 623(a)(1)).  However, the "ADEA does not make it unlawful for an employer to do a poor job of selecting employees.  It merely makes it unlawful to discriminate on the basis of age." Cotton v. Alameda, 812 F.2d 1245, 1249 (9th Cir. 1987).  To establish an ADEA claim, a "plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employment decision." Gross v. FBL Fin. Servs., Inc., 129 S.Ct. 2343, 2351 (2009).  Under "but-for" causation, a plaintiff must show that age was "the reason" for the adverse employment action; there is no ADEA liability for "mixed motive" employment actions.  See id. at 2350, 2352; Liebowitz v. Cornell Univ., 584 F.3d 487, 498 n.2 (2d Cir. 2010).

"[Courts] evaluate ADEA claims that are based on circumstantial evidence of discrimination by using the three stage burden-shifting framework laid out in *McDonnel Douglas Corp. v. Green*, 411 U.S. 702 (1973)."  Diaz v. Eagle Produce Ltd. P'shp, 521 F.3d 1201, 1207 (9th Cir. 2008); see Enlow, 389 F.3d at 812.  Under the *McDonnel Douglas* framework:

the employee must first establish a prima facie case of age discrimination. If the employee has justified a presumption of discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment action.  If the employer satisfies its burden, the employee must then prove that the reason advanced by the employer constitutes mere pretext for unlawful discrimination.

Diaz, 521 F.3d at 1207.

In order to prove a *prima facie* case of discrimination in the context of a failure to hire, a plaintiff must show that:  (1) he was at least 40 years old at the time of the alleged discrimination; (2) he was subjected to an adverse employment action; (3) he was otherwise qualified for the position; and (4) after he was rejected, a substantially younger applicant was selected.  Hedrick v. W. Reserve Care Sys., 355 F.3d 444, 460 (6th Cir. 2004); Zaccagnini v. Charles Levy Circ. Co., 338 F.3d 672, 675 (7th Cir. 2003); see Cotton, 812 F.2d at 1248; see also O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312-13 (1996) ("The fact that one person in the protected class has lost out to another person in the protected class is thus irrelevant, so long as he has lost out because of his age. . . . [T]he fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class.")

With respect to the second phase of the framework, the explanation for the defendant's conduct must be non-discriminatory and must explain why the specific plaintiff suffered the adverse action.  See Diaz, 521 F.3d at 1211.  "This burden is one of production, not persuasion; it can involve no credibility assessment."  Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 143 (2000).

With respect to the third phase of the framework, a plaintiff "may demonstrate pretext either directly by persuading the court that a discriminatory reason likely motivated [the employer] or indirectly by showing that [the employer's] proffered explanation is unworthy of credence."  Diaz, 521 F.3d at 1212.  When the evidence is direct, "very little" evidence is required to survive summary judgment, but when the evidence is indirect, that indirect evidence "must be specific and substantial to defeat the employer's motion for summary judgment."  EEOC v. Boeing Co., 577 F.3d 1044, 1049 (9th Cir. 2009); Coghlan v. Am. Seafoods Co. LLC,

413 F.3d 1090, 1095 (9th Cir. 2005).  Statistical evidence, internal inconsistencies, and "shifting explanations" are examples of forms of indirect evidence that may tend to show pretext.  E.g. Diaz, 521F.3d at 1214; Coughlan, 413 F.3d at 1095; Nidds v. Schindler Elevator Corp., 113 F.3d 912, 918 (9th Cir. 1996); see also Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 771 (11th Cir. 2005) (evidence of pretext should show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence").  "Shifting reasons" are "fundamentally different justifications for an employer's action [that can] give rise to a genuine issue of fact with respect to pretext since they suggest the possibility that neither of the official reasons was the true reason."  Culver v. Qwest Communs. Corp., 306 Fed. Appx. 403, 405 (9th Cir. 2009); Nidds, 113 F.3d at 918; Washington v. Garrett, 10 F.3d 1421, 1434 (9th Cir. 1994).  However, "separate reasons offered by an employer are not considered 'shifting' if they are not 'incompatible.'"  Culver, 306 Fed. Appx. at 405; see Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1063 (9th Cir. 2002); Johnson v. Nordstrom, Inc., 260 F.3d 727, 733-34 (7th Cir. 2001); Nidds, 113 F.3d at 918.  That is, pretext is not inferred "from the simple fact that [the employer] had two different, although consistent, reasons" for its conduct.  Aragon v. Republic Silver State Disposal, 292 F.3d 654, 661-62 (9th Cir. 2002).

### *Discussion*

    1.    Direct Evidence of Discrimination

       There is no evidence of direct age discrimination.  In a footnote, the EEOC argues that Rex and Carlberg being told to right their ages, combined with evidence that shows Rafayelyan made hiring decisions based on appearance, arguably constitutes direct evidence of age discrimination.  The Court cannot agree.  First, as Timeless rightly points out, merely asking for an applicant's age on an employment application is not improper.  See 29 C.F.R. § 1625.5.  Second, the testimony that the EEOC relies on is stretched too far.  The EEOC cites testimony by Rafayelyan and Shiralian in support of PUF 1.6, which in turn is used to support the argument.  In response to a question about what managers look for in making the decision to hire a cashier, Shiralian answered that the candidate should have experience and be "presentable."  See

Shiralian Dep. 83:3-10.  Shiralian then explained that "presentable" meant no tattoos or "different dress or clothes."  Id. at 83:11-15.  Rafayelyan's testimony was essentially the same as Shiralian's.  Rafayelyan was consistently speaking about tattoos and "weird clothes."  See Rafayelyan Dep. 62:18-63:7, 210:16-211:3, 215:4-12.  None of the cited deposition excerpts discuss or relate to age.  Being concerned with how a person dresses and whether they have visible tattoos has no relation to age discrimination.  Contrary to the EEOC's assertion, there is not even "arguable" direct evidence of discrimination.  This case is based on indirect evidence of discrimination.

> 2.    Indirect Evidence of Discrimination

After reviewing the arguments and evidence cited, the Court agrees with the EEOC and believes that there are genuine, material disputes within the *McDonnel Douglas* framework.

> a.    *Prima Facie* Case

There is no dispute that Rex and Carlberg are in the protected class, see PUF 2.1, 3.9, that they were not hired by Timeless, see PUF 6.1, and that substantially younger individuals (people in their teens, twenties, or thirties) were hired instead.  See PUF 6.2, 11.7, 12.20; Plaintiff's Ex. 168; Court's Docket Doc. No. 39 at 5.  There is a genuine material dispute regarding whether Rex and Carlberg were qualified.  The qualifications identified as at issue in this motion are prior experience and immediate availability.

With respect to Carlberg, his application stated that he could start the next day.  See Defense Ex. C.  He was therefore "immediately available."  Carlberg's application does not indicate prior cashier experience, and thus fails to meet the identified hiring criteria.[30]  However, there is a question as to whether this criteria is legitimate.  Timeless does not dispute that the applications of Marisela G. and Steve F. do not reflect cashier experience.  See PUF's 6.3, 9.1. Marisela G.'s application indicates that her prior experience was that of an administrative

---

[30]The EEOC argues that the what amount of prior experience is sufficient is too subjective to be determined on summary judgment.  However, if experience is a requirement, no subjective assessment is needed when an applicant has zero prior experience.

assistant, a receptionist, and a vendor,[31] while Steve F.'s prior experience was listed as a fast-food cook.  See Plaintiff's Exs. 131, 133.  Marisela G. was hired on July 15, 2004, see PUF's 11.7; Plaintiff's Ex. 168, and Steve F. was hired on October 20, 2004, see PUF 10.10,[32] and both were hired by Rafayelyan.  See PUF's 6.3, 9.1.[33]  As outlined above, Rafayelyan's declaration states that, because of the high number of applications, he could be "picky" and would skip over "less than perfect" applicants.  See Rafayelyan Dec. ¶¶ 10, 11.  If experience was truly an important criteria, then Rafayelyan should have skipped over Marisel G.'s and Steve F.'s respective applications since they do not show the required criteria and are thus, "less than perfect."  Cf. Rafayelyan Dec. ¶¶ 10, 11 with Plaintiff's Exs. 131, 133.  Steve F.'s application especially gives no indication of one who has any experience working with a cash register or interacting with customers.  See Plaintiff's Ex. 133.  There is therefore a genuine dispute concerning whether Carlberg was qualified for the position of cashier.

With respect to Rex, his application indicates that he had been working for a Mobil gas station as a cashier for 4 months.  See Defense Ex. B.  Rex's application thus reflected cashier experience.  Rex's application does not show immediate availability, and therefore fails to meet the identified criteria.  See id.  Rafayelyan declared that, when he hired an applicant, he needed to fill the position quickly and did not have two weeks to spare for any candidate.  See Rafayelyan Dec. ¶ 11.  However, Rafayelyan hired Alicia Corona in 2004.  See PUF 10.4.  Corona testified that she informed Rafayelyan that she did not know when her exact start date might be and that she would need to give her current employer two weeks notice; Rafayelyan responded that it

---

[31]Neither party explains or otherwise addresses Gomez's experience as a "vendor."

[32]Although far from clear, the EEOC interprets a portion of Rafayelyan's testimony to mean that he keeps all applications and may review those applications for up to six months.  See PUF 11.8; Rafayelyan Depo. 80:20-82:25.  Under this interpretation of the testimony, Rex and Carlberg's applications would have been considered by Rafayelyan from July 2004 to January 2005.  Since this interpretation is not unreasonable, and the evidence must be viewed in the light most favorable to the non-moving party, the Court will adopt the EEOC's interpretation of Rafayelyan's testimony for this motion.

[33]In response to a related PUF, PUF 9.2., Timeless states that Rafayelyan does not remember hiring Marisela G. or Steve F.  However, it is undisputed that Rafayelyan hired the cashiers in 2004.  See DUF 9; Plaintiff's Exs. 229, 230.

would be fine.  See PUF 10.6, 10.7.[34]  Corona's experience is contrary to Rafayelyan's

declaration.[35]

Further, Rex stated that he could begin on July 20, 2004.  Three individuals were hired

after July 20, 2004.  See PUF 10.10.  Specifically, Jessica G. was hired on July 22, 2004,

Dominique C. was hired on July 29, 2004, and Steve F. was hired in October 2004.  See id.

Assuming that Rex had to give two weeks notice to the Mobil station, as opposed to simply being

able to start on July 20, fifteen days passed from the first July hiring, Paul H. on July 14, 2004,

see PUF 11.7; Plaintiff's Ex. 168; Court's Docket Doc. No. 39 at p.5, to the hiring of Dominique

C. on July 29, 2004.  See PUF 10.10.  From the date of Rex's application on July 5, 2004,

Timeless did not fill the four cashier vacancies[36] until 24 days later on July 29, 2004.  Even if

Rex had to give two weeks notice as of July 5, that two weeks was well within the number of

days Timeless took to fill the positions.[37]  Corona's experience, combined with the amount of

time it took Timeless to fill all cashier vacancies create a genuine dispute as to whether

immediate availability is a qualification for the cashier position.

b.      Pretext

The reasons that Timeless gives for not hiring Rex and Carlberg are that Rex was not

immediately available and Carlberg had no cashier experience.  In other words, Timeless asserts

that the reason for not hiring Rex and Carlberg were that those individuals were not qualified.

As discussed above, there are  material disputes whether prior cashier experience and immediate

availability are in fact genuine qualifications.

---

[34]Timeless argues that Alicia Corona was hired at a different time, and that there was a need for rapid replacement at the time Rex applied.  However, Timeless has submitted no declarations or cited to any deposition testimony that indicates that Timeless viewed July 2004 as unusual or requiring rapid hiring.  Rafayelyan's declaration speaks only in general terms about hiring practices, he did not declare that July 2004 required a different practice.

[35]The EEOC also argues that Jose Troncoso was allowed to give a two week notice to his then employer.  However, Troncoso was not hired as a cashier, he was hired as a janitor.  See Troncoso Depo. 15:2-8.  The question at this stage is whether Rex met the qualifications to be a cashier, not a janitor.

[36]The Court refers to the four cashiers who separated from Timeless on June 21, 2004.  See PUF 11.6.  Additionally, a cashier also separated from Timeless on July 19, 2004.  See id.

[37]A considerably larger time frame is involved when comparing the hiring of Steve F. in October 2004.

Further, Timeless is correct that merely asking an applicant to write down his age is not itself improper.  See 29 U.S.C. § 1625.5.  However, the regulation states that such applications will be closely scrutinized to ensure that the request is for a "proper purpose."  See id.  There does not appear to be a dispute that, because the EZ Trip sells alcohol and tobacco, the cashier at that location must be at least 21 years old.  See DUF 23; Plaintiff's Response to DUF 23; PUF 12.1.  However, it is undisputed that there are at least three individuals who worked at the Plaza and whose applications contained their ages.  See PUF's 12.4, 12.5,12.6, 12.7.  The Plaza does not sell alcohol or tobacco.  See PUF's 12.1, 12.2,12.3.  In the absence of clarification regarding the application process for the Plaza and the EZ Trip, obtaining the ages of those who work at the Plaza is inconsistent with the goal of ensuring compliance with state alcohol and tobacco laws.

The evidence that individuals who work at the Plaza wrote down their ages on their applications, combined with the evidence that indicates experience and immediate availability were not required to be a cashier, produce sufficiently specific and substantial evidence to indicate pretext.[38]  Viewing the evidence in the light most favorable to the EEOC as the non-moving party, there is circumstantial evidence of age discrimination.  Summary judgment on this claim will be denied.

**E.      Laches**

*Defendant's Argument*

Timeless argues that the EEOC waited over four years to bring suit.  The EEOC was given employment applications in December 2004, but did not attempt to reconcile until three years later.  As the case stands, Rex is dead and Timeless was not able to take his deposition and

---

[38]With respect to the EEOC's arguments regarding "shifting reasons," it is not clear to the Court that Timeless has utilized "shifting reasons."  Rafayelyan's identification of immediate availability as a criteria in his declaration does not seem contrary to, or incompatible with, the criteria stated in his deposition.  Cf. Culver, 306 Fed. Appx. at 405; Aragon, 292 F.3d at 661-62; Villiarimo, 281 F.3d at 1063; Johnson, 260 F.3d at 733-34; Nidds, 113 F.3d at 918.  Similarly, that Timeless at first denied asking for any applicant's age, see PUF 12.8, but then admitted that it did so from May 2004 to August 2004, see Shiralian Dec. ¶ 8, does not address the reasons for not hiring Rex and Carlberg.  Nevertheless, it is unnecessary for the Court to hold that Timeless utilized "shifting reasons" because there is sufficient evidence of pretext to deny Timeless's summary judgment motion.  The Court expresses no opinion on "shifting reasons."

question his version of events.  Many of Timeless's employees are either gone or do not

remember facts very well.  This includes a former counsel who, by the time of conciliation, had

stopped practicing law, established a restaurant, and had little recollection of the case.  Timeless

also had lost or misplaced records produced to the EEOC because management and then counsel

thought that the matter had been closed.

### *Plaintiff's Opposition*

The EEOC argues that, under Rule 12(h)(1), Timeless waived the affirmative defense of

laches because that defense was not raised in the answer.  Alternatively, the EEOC argues that it

did not unreasonably delay in filing this lawsuit.  Most cases find an unreasonable delay when a

five year time period is involved.  Here, less than four years passed from the date that Carlberg

filed his charge.  There are no cases that hold a delay of less than four years is unreasonable.

Also, there is no prejudice to Timeless as a result of any delay by the EEOC.  Timeless was

aware of the charges against them and could have taken steps to preserve documents and obtain

statements from employees.  Further, although Rex is now deceased, Timeless was aware of his

charge.  The EEOC is willing to relax the hearsay rule and stipulate that Rex's testimony would

be consistent with his charge.  Also, Rex's nephew has testified about Rex's employment history

from July 2004 through December 2008, and Rex's W2's are available.

### *Legal Standard*

A defendant may raise the affirmative defense of laches in defense to suits brought by the

EEOC.  See EEOC v. Alioto Fish Co. Ltd., 623 F.2d 86 (9th Cir. 1980).   If the elements of a

laches defense are met, a court may dismiss the entire case, dismiss certain claims, or restrict the

damages available to the plaintiff.  See EEOC v. Massey-Ferguson, Inc., 622 F.2d 271, 276 (7th

Cir. 1980); EEOC v. Peterson, Howell & Heather, Inc., 702 F.Supp. 1213, 1220 (D. Md. 1989).

"To successfully establish laches, a party must show that (1) there was inexcusable delay in the

assertion of a known right and (2) the party asserting laches has been prejudiced."  O'Donnell v.

Vencor Inc., 466 F.3d 1104, 1112 (9th Cir. 2006); see Apache Survival Coalition v. United

States, 21 F.3d 895, 905 (9th Cir. 1994).

"Each case must be considered on its own facts in determining the reasonableness of the

delay; laches is an equitable, hence flexible, doctrine, and no length of time is considered *per se* unreasonable." Whitfield v. Anheuser-Busch, Inc., 820 F.2d 243, 245 (8th Cir. 1987); EEOC v. Liberty Loan Corp., 584 F.2d 853, 857 (8th Cir. 1978); EEOC v. Luby's Inc., 2005 U.S. Dist. LEXIS 38089, *20 (D. Ariz. Dec. 29, 2005); see also Grand Canyon Trust v. Tucson Elec. Power Co., 391 F.3d 979, 988 (9th Cir. 2004); Alioto Fish, 623 F.2d at 88. In assessing delay, a court must consider the reasons for or causes of the delay. Danjaq LLC v. Sony Corp., 263 F.3d 942, 954 (9th Cir. 2001). The EEOC's "workload has been rejected as an excuse for unreasonable delay." Alioto Fish, 623 F.3d at 88; see EEOC v. Dresser Indus., Inc., 668 F.2d 1199, 1203 (11th Cir. 1982); Massey-Ferguson, 622 F.2d at 277-78; Liberty Loan, 584 F.2d at 857.

With respect to prejudice, courts recognize evidentiary and expectations based prejudice. Grand Canyon, 391 F.3d at 988; Danjaq LLC v. Sony Corp., 263 F.3d 942, 955 (9th Cir. 2001). "Expectations" based prejudice occurs when a defendant "took actions or suffered consequences that it would not have, had the plaintiff brought suit promptly." Grand Canyon, 391 F.3d at 988; Danjaq, 263 F.3d at 955. "Evidentiary prejudice includes such things as lost, stale, or degraded evidence, or witnesses whose memories have faded or who have died." Grand Canyon, 391 F.3d at 988; Dajaq, 263 F.3d at 955. When courts have upheld a laches defense based on evidentiary prejudice, "they have done so because that evidence would have been relevant to one or more essential issues in dispute between the parties." Vineberg v. Bissonnette, 548 F.3d 50, 58 (1st Cir. 2008). "Regarding the availability of witnesses, the inquiry is not whether some witnesses might be available – it is whether the absence of other witnesses . . . will prejudice [the defendant]." Danjaq, 263 F.3d at 956.

*Discussion*

1.    Waiver

The EEOC's waiver argument is frivolous. First, Rule 12(h) expressly refers to defenses listed in Rules 12(b)(2), 12(b)(3), 12(b)(4), and 12(b)(5), as being subject to waiver, and none of those defenses involves laches. See Rules 12(b)(2)-(5), (h). Rule 12(h) has zero application to the defense of laches.[39] Second, the EEOC's position is directly contrary to established and

---

[39] Rule 8(c)(1), however, identifies "laches" as an affirmative defense that is to be pled in an answer.

binding Ninth Circuit authority.  "In the absence of a showing of prejudice, an affirmative

defense may be raised for the first time at summary judgment."  Camarillo v. McCarthy, 998

F.2d 638, 639 (9th Cir. 1993); see Simmons v. Navajo County, 609 F.3d 1011 (9th Cir. 2010);

Paine v. City of Lompoc, 265 F.3d 975, 980 n.1 (9th Cir. 2001); Ledo Fin. Corp. v. Summers,

122 F.3d 825, 827 (9th Cir. 1997); Rivera v. Anaya, 726 F.2d 564, 566 (9th Cir. 1984).[40]  Since

the EEOC makes no argument that it is prejudiced by Timeless raising laches in this motion,

Timeless has not waived this affirmative defense.[41]  See id.

    2.    Delay

Aside from Rex's July 29, 2004, charge and Carlberg's November 23, 2004, charge, the

evidence indicates that the EEOC received information from Timeless in October and December

2004, and January 2005.  See Defense Exs. E, F; Plaintiff's Ex. 182.  However, a determination

of reasonable cause was not made until September 28, 2006.  See PUF 8.9.  That is, from January

2005 to September 2006, a period of approximately 20 months, nothing appears to have

occurred.  Once the reasonable cause letters were sent to Timeless on September 28, 2006, the

next event did not occur until January 24, 2008, when the EEOC sent two letters (one regarding

Rex, the other regarding Carlberg) offering to conciliate.  From September 28, 2006, to January

24, 2008, that is approximately 16 months, there is again no evidence of anything occurring.

From February 2008 through September 2008, the parties were in the process of conciliation and

negotiation.  See Garcia-Bautista Dec. Exs. 5, 6, 7, 8, 9.  Thus, while the evidence shows that

---

[40] The Court is troubled that the EEOC did not cite any of these cases.  The cases are numerous, and they do not involve an esoteric issue.  Litigants before this Court are under an obligation to cite controlling authority, even if that authority is contrary to an advocated position.

[41] In opposition to a separate motion to amend (which is pending before the Magistrate Judge), the EEOC argued that it would be prejudiced if the answer were amended to include several affirmative defenses, including laches. This argument was neither made nor referenced in connection with summary judgment.  The Court is not obligated to find material arguments that are made solely in separate, later filed motions.  Even if the Court were to consider the EEOC's prejudice argument, there is no dispute that the March 2, 2009, joint scheduling report stated that Timeless was prejudiced by the EEOC's over 4 year delay and that "the doctrine of laches should apply." See Court's Docket Doc. No. 17.  The April 9, 2009, scheduling order incorporates these identical contentions, including the statement that "Defendant argues that the doctrine of laches should apply."  Id. at Doc. No. 20.  The EEOC has known of Timeless's laches defense since March and April 2009.  The EEOC had more than sufficient time and notice to explore the laches defense.  See Moore, Owen, Thomas & Co. v. Coffey, 992 F.2d 1439, 1442 (6th Cir. 1993) (and cases cited therein); Lexington Ins. Co. v. Swanson, 2007 U.S. Dist. LEXIS 37620, *13-*15 (W.D. Wash. May 23, 2007).

there were periods of activity regarding these charges, there is approximately 36 months of apparent inactivity – three years.

The EEOC offers no explanation for why it waited over four years (50 months) to bring suit on Rex's claim, why it waited just under four years (46 months) to bring suit on Carlberg's claim, and why there is three years of apparent inactivity. Simply citing cases where the laches delay was more than the delay in this case is not persuasive because there is no *per se* time period required for a delay to be deemed unreasonable, rather delay depends upon the circumstances of the individual case. See Whitfield, 820 F.2d at 245; Liberty Loan, 584 F.2d at 857 (finding a delay of 52 months unreasonable); Luby's, 2005 U.S. Dist. LEXIS 38089 at *20; see also Alioto Fish, 623 F.2d at 88. In the absence of an explanation, the Court finds that the 50 month and 46 month time periods, which both include approximately 36 months of inactivity, were "inexcusable."

    2.    Prejudice

        a.    Rex

As a charging party and one on whose behalf the EEOC seeks damages, Rex's testimony was clearly relevant to the issues of liability and damages. Cf. Vineberg, 548 F.3d at 58. This lawsuit was filed on September 29, 2008. Rex died in December 2008, likely before December 15, and it appears that he died from cancer. See Nostrant Dep. 29:8-30:4, 51:23-25. Thus, suit was filed 50 months after Rex's charge, and Rex died between 52 and 53 months after the charge. There is no indication that Timeless was aware that Rex had health problems, or that Rex's death was otherwise foreseeable or expected to Timeless.[42] Cf. EEOC v. Lockheed Martin Global Telecomms., Inc., 514 F.Supp.2d 797, 804 n.11 (D. Md. 2007) ("The record reflects that [witness] Regan's death was sudden, and only three months after the filing of the complaint. [Employer] LMGT's failure to depose him within three months of the filing of the complaint should not operate as a bar to its raising the defense of laches."). Nostrant testified that Rex probably died "within a couple of months" of being diagnosed with cancer. See Nostrant Dep.

---

[42] The EEOC argues briefly and without citation to any authority that the death of an age discrimination plaintiff is hardly unforeseeable. Rex was 60 in July 2004, and was 64 in September 2008. These ages are not so advanced that Timeless should have anticipated that Rex would die soon.

29:24-30:1.[43]  Given how quickly Rex appeared to have passed following his cancer diagnosis, it

is highly likely that had the EEOC not sat idle for 36 months, Rex would have been available for

deposition.  Additionally, there is no evidence about the communications between the EEOC and

Rex regarding discovery or the filing of the lawsuit.  Since it appears that Rex was diagnosed

with cancer sometime around the filing of this lawsuit, if proper communication had been

maintained between Rex and the EEOC, the EEOC could have informed Timeless about Rex's

dramatic change in health, thereby giving Timeless a reasonable opportunity to take Rex's

deposition.  As it happens, the EEOC did not inform Timeless about Rex's death until April 28,

2009 – five to six months after the fact.  See PUF 8.17.  It is not unreasonable to expect the

EEOC to maintain communication with a person on whose behalf it is seeking to obtain

monetary relief.  The EEOC has culpability for the loss of Rex's testimony.

To address the absence of testimony from Rex, the EEOC relies on *EEOC v.

Worthington, Moore & Jacobs, Inc.*, 582 F.Supp.2d 731 (D. Md. 2008), a Title VII sexual

harassment case.  In *Worthington*, a key witness, Muffoletto, died unexpectedly about two

months after the EEOC filed suit.  See id. at 736 n.12.  Muffoletto was the company president

and the person alleged to have committed sexual harassment.  See id. at 733.  The employer

pointed to a three year delay in the investigation and argued that, had the EEOC filed suit earlier,

then Muffoletto would have been alive and could have assisted in the defense of the suit.  See id.

at 734.  The District Court noted that the employer had had the opportunity to obtain and

preserve Muffoletto's version of events since the 2001 charge and investigation.[44]  See id. at 737.

The District Court then discussed ways that the EEOC had suggested to mitigate the prejudice

from Muffoletto's death:[45]

> For instance, the Court can minimize the prejudice at trial by relaxing the hearsay
> rule to admit Mr. Muffoletto's written statements, as well as the oral denials of
> discrimination that he made to his son, Mark Muffoletto.  Company officials who

---

[43]When asked about the date of Rex's cancer diagnosis, Nostrant responded that he did not know the exact
date, but "I know it was probably a couple months before he passed."  Nostrant Depo. 29:24-30:1.

[44]Several charges, spanning several years, were filed with the EEOC.  Worthington, 582 F.Supp.2d at 734.

[45]The District Court had requested briefing from the parties on what evidentiary rulings might mitigate
prejudice.  See Worthington, 582 F.Supp.2d at 737.

observed Mr. Muffoletto's interactions with the claimants and other female employees may also testify as to his comportment. The EEOC has agreed to stipulate to statements made by both the company and Mr. Muffoletto which broadly deny that he engaged in a pattern or practice of harassment. Introduction of this evidence may reasonably state Mr. Muffoletto's side of the story, even though he is unavailable to testify.

Id. at 737. The District Court ultimately denied the company's summary judgment motion. See id. The District Court found that the facts required more development and thus, "any finding of prejudice that [the employer] suffered as a result of EEOC's delay is a matter best reserved for resolution at trial." Id.

Here, the EEOC offers to stipulate that Rex's charge would be representative of Rex's testimony, and offers to relax the hearsay rule so that written statements obtained by the EEOC from Rex (which have been provided to Timeless as part of the initial disclosures) can be admissible. See Court's Docket Doc. No. 39 at 29:17-28. Also, Nostrant has been deposed and has knowledge of Rex's charge. Further, the EEOC argues that Timeless cannot argue prejudice from Rex's death because all relevant and available information regarding mitigation, i.e. the W2's and Nostrant's testimony, have been provided, and Rex's version of events has been developed through discovery. See id. at 29:9-16. The Court is not convinced.

With respect to the issue of Rex's efforts to mitigate damages, it is theoretically possible for other evidence to sufficiently take the place of Rex's testimony. See Lockheed Martin, 514 F.Supp. 2d at 804-05. However, the identified evidence is not a proper substitute for Rex's own testimony. First, although some W2's have been submitted to the Court, the W2's provided are only from 2004 and 2005. See Plaintiff's Exs. 209, 210. No W2's have been produced for 2006, 2007, and 2008; thus, there is a glaring gap of relevant information. Also, the W2's speak neither to the *reasonableness* of efforts to find work, see Cassino, 817 F.2d at 1345, nor do the 2004 W2's distinguish between income earned pre- and post-application with Timeless. It is possible that the income earned was entirely pre-application. As for the testimony of Nostrant, he has been deposed and questioned about Rex's work history. However, as discussed above, Nostrant's deposition testimony contains a disturbingly high number of "I don't know" answers. Again, with respect to 2005 through 2007, Nostrant thought that Rex was working in those years, but he does not know where Rex worked, he does not know if Rex was working full or part time,

he does not know if Rex was working throughout those years, he would see Rex around 3 or 4 times a month from 2005 through 2007, and he testified with respect to 2005, "I wasn't the keeper of his hours. I don't know." Id. at 30:14-33:12. As to 2004, Nostrant testified that it was his "recollection" that Rex was employed the entirety of 2004.[46] See id. at 34:1-7. With respect to 2008, Nostrant testified that it was a very difficult year for the family, and "[I] don't know. I don't know too much about 2008. On the record, I don't know." Id. at 31:1-4. Finally, when asked whether Rex looked for work "elsewhere" from 2004 to 2008, Nostrant testified that he did not know.[47] Id. at 45:18-24. Nostrant's deposition is vague, and it is apparent that he is operating under a generalized belief instead of concrete knowledge. The numerous "I don't know" answers to the most material questions demonstrates the need for Rex himself to testify. The two years worth of W2's and Nostrant's testimony are simply an inadequate substitute for Rex's own testimony. Cf. Lockheed Martin, 514 F.Supp. 2d at 804-05 (noting that a sufficient quantity of additional evidence prevented the defense from being "crippled").

With respect to liability issues, because of Rex's death, Timeless cannot develop, explore, or challenge Rex under oath about his version of events. No direct confrontation or probing is possible. The EEOC's suggested alternatives to Rex's direct testimony are not sufficient. First, the EEOC does not explain how Rex's version of events has been developed through discovery, especially since he was not deposed. The EEOC's bare assertion is not sufficient evidence. Second, although the EEOC states that written statements by Rex were provided to Timeless, it neither adequately describes the contents of those statements nor provides the Court with copies of those statements. Thus, the Court cannot assess the value of these written statements. Third, the Court does not see the feasibility or propriety of "relaxing" the hearsay rule. Although this was a suggestion made by the EEOC in *Worthington*, the hearsay objection in that case would have been made by the EEOC. See Worthington, 582 F.Supp.2d at 733, 737. Muffoletto was a defense witness, and it would have been the defense who offered Muffoletto's hearsay statements

---

[46]The Court notes, however, that Rex's W2 income for 2004 is less than the income of someone who worked 2000 hours at the minimum wage of $6.75. See Footnote 23, *supra*.

[47]Nostrant also testified that he did not know if Rex talked about wanting another job, besides the job he already had. See Nostrant Depo. 45:25-46:6.

against the EEOC.  See id.  Thus, the EEOC was offering to waive its own valid objection in

order to admit evidence by the defense.  In contrast, the EEOC in the case at bar would be

offering Rex's statements against Timeless.  The EEOC is essentially offering to waive a valid

objection that is possessed by Timeless, in order to admit evidence against Timeless.  That is, the

EEOC is offering to disarm Timeless of a valid objection.  Relaxing the hearsay rule to allow

Rex's "hearsay evidence" in this situation would exacerbate prejudice, rather than alleviate it,

because Rex's written version would be admitted without direct probing and exploration by

Timeless.  The EEOC's suggested methods of alleviating prejudice are simply insufficient.

Because Rex is a charging party and is a person for whom the EEOC seeks monetary

relief, his testimony regarding liability and damages, especially mitigation, is highly important.

Cf. Vineberg, 548 F.3d at 58; Danjaq, 263 F.3d at 955-56.  The evidence that is available has not

been shown to be an adequate substitute for Rex's own testimony.  Cf. Lockheed Martin, 514

F.Supp. 2d at 804-05.  Unlike the defendants in Worthington, it is apparent that Rex's death has

materially prejudiced Timeless.  Cf. Worthington, 582 F.Supp.2d at 737.  Further, if the EEOC

had filed suit sooner, it is likely that Rex could have been deposed.  Moreover, if proper

communication between Rex and the EEOC had been maintained, the EEOC could have

informed Timeless about Rex's change in health, instead informing Timeless of Rex's death five

to six months after the fact.  The EEOC has culpability for the loss of Rex's testimony.

Summary judgment in favor Timeless on the defense of laches as to Rex is appropriate.[48]  See

Vineberg, 548 F.3d at 58; Danjaq, 263 F.3d at 955-56; cf. Worthington, 582 F.Supp.2d at 737;

Lockheed Martin, 514 F.Supp. 2d at 804-05.

---

[48]In 2000, the Ninth Circuit observed that it was unaware of any case that found prejudice (for laches purposes) based on the post-lawsuit death of a key witness.  See Couveau v. American Airlines, Inc., 218 F.3d 1078, 1084 (9th Cir. 2000).  Although no party has cited Couveau for this proposition, the Court does not believe that Couveau is controlling in this case.  First, in the years following Couveau, two federal courts in Maryland, Worthington and Lockheed Martin, have acknowledge that a death that occurs shortly after the filing of a lawsuit may be a sufficient predicate for prejudice.  See Worthington, 582 F.Supp.2d at 737; Lockheed Martin, 514 F.Supp. 2d at 804 n.11.  The EEOC itself relies heavily on Worthington.  Second, Couveau involved a witness, it did not involve a charging party who was attempting to obtain relief/on whose behalf relief was being sought.  Third, unlike the witness in Couveau, Rex was not under the control of Timeless.  Fourth, unlike Couveau, the other available witness (Nostrant) and evidence (two W2's) in this case does not sufficiently compensate for Rex's lost testimony, as explained above.  Finally, in the absence of knowledge that a witness/party is in poor health and/or is likely soon to die, the Court does not believe that it is reasonable to require a defendant to immediately notice depositions upon being served with process.  Cf. Lockheed Martin, 514 F.Supp. 2d at 804 n.11.

The question becomes what relief should be granted.  Once a laches defenses is established, the Court may strike certain claims, all claims, or limit the relief available.  See Massey-Ferguson, 622 F.2d at 276; Peterson, Howell, 702 F.Supp. at 1220.  The Court will not dismiss the entirety of the case regarding Rex.  If there was only one charging party, i.e. Rex, a different result may occur.  However, the evidence under the *McDonnel Douglas* framework, when viewed in the light most favorable to the EEOC, indicates age discrimination against two individuals.  Because there are multiple charging parties, the Court believes that the public interest is best served by allowing the claim regarding both Carlberg and Rex to continue. Instead of dismissal, the Court believes that the proper remedy is to preclude all compensatory relief as to Rex.  As discussed, the available evidence regarding mitigation is insufficient. Further, since Rex is deceased, liquidated damages are unavailable as a matter of law.  Rex's death also makes the remedies of reinstatement and front pay unavailable.[49]  If the jury finds age discrimination as to Rex, the Court can frame prospective, injunctive relief that furthers the public interest.[50]  Accordingly, the remedy for the laches violation shall be that the EEOC is precluded from obtaining relief on behalf of Rex.[51]

### b.   Carlberg

The Court does not see prejudice with respect to Carlberg.  Unlike Rex, there is no death that deprives Timeless of key testimony.  Carlberg is alive and was deposed.  Further, although Timeless states that memories have faded and key employees are no longer employed by Timeless, there is no evidence to support the assertion.  Timeless does not identify the former

---

[49]"Front pay" is an equitable remedy that is determined by the court, and is "money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement."  Traxler v. Multnomah County, 596 F.3d 1007, 1009-10 & n.1 (9th Cir. 2010).

[50]In this respect, the Court notes that the parties had reached agreement regarding the particulars of injunctive relief during pre-lawsuit negotiations.  The Court also notes that the individual who allegedly discriminated on the basis of age, Rafayelyan, is no longer employed by Timeless, and it appears that Timeless employs a number of persons over the age of 40.

[51]The Court realizes that it has found Timeless's ability to defend against Rex's version of events has been prejudiced.  However, the EEOC, using Rex's application, can still establish a *prima facie* case of age discrimination.  At this point, the Court does not see prejudice to Timeless through use of Rex's application.

employees,[52] and provides no examples of faded memories, other than that of its former legal counsel.[53]    Summary judgment on the defense of laches with respect to Carlberg will be denied.

## CONCLUSION

Both parties move for summary judgment or partial summary judgment.

The EEOC's summary judgment motion challenges nine affirmative defenses.  With respect to the first affirmative defense, summary judgment will be granted because the complaint states a cause of action.  With respect to the second and eighth affirmative defenses, summary judgment will be granted because there is no statute of limitations against the EEOC in an ADEA claim.  With respect to the third affirmative defense, summary judgment will be denied because the evidence fails to establish as a matter of law that either Rex or Carlberg utilized reasonable efforts under the circumstances to mitigate their damages.  With respect to the fourth affirmative defense, summary judgment will be granted because the evidence establishes that the EEOC engaged in good faith conciliation efforts between February and September 2008.  With respect to the fifth affirmative defense, summary judgment is appropriate because Timeless has shown neither that misconduct is a viable defense to an ADEA claim nor that Rex, Carlberg, or the EEOC engaged in misconduct.  With respect to the sixth and seventh affirmative defenses, summary judgement will be granted because Timeless concedes that those defenses have no application to this case.  With respect to the ninth affirmative defense, summary judgment will be granted because a reservation of unnamed affirmative defenses is not itself an affirmative defense.

Timeless's summary judgment motion raises five issues.  Summary judgment with respect to the EEOC's conciliation efforts will be denied because the evidence establishes that the EEOC conciliated in good faith over a period of several months.  Summary judgment with

---

[52] The Court notes that Rafayelyan is a former employee of Timeless and a critical witness in this case. However, his deposition, which spans two volumes, has been taken.

[53]  The EEOC reproduced to Timeless the documentation that Timeless's former counsel had submitted. Also, there is no explanation of how the faded memory of a former attorney, who does not appear to have been a percipient witness, prejudices Timeless.

respect to Rule 25(a) and Rex will be denied because it is not clear that this rule has application to this case and, even if the rule applies, no formal suggestion of death has been filed.  However, summary judgment will be granted in favor of Timeless on the issue of liquidated damages for Rex because Rex's death extinguishes the ability to obtain liquidated damages.  Summary judgment with respect to damages suffered by Carlberg will be denied because the evidence does not establish as a matter of law that Carlberg suffered no recoverable damages.  Summary judgment with respect to the EEOC's disparate treatment ADEA claim will be denied because there are genuine disputes of material fact regarding whether Rex and Carlberg were qualified for the position of cashier, and whether Timeless's reasons for not hiring Rex and Carlberg were pretext.  Summary judgment on the affirmative defense of laches will be denied as to Carlberg because the evidence does not show that Timeless suffered prejudice.  Finally, summary judgment on the affirmative defense of laches will be granted as to Rex because the evidence shows an unreasonable delay by the EEOC and resulting prejudice to Timeless in the form of Rex's lost testimony.  As a remedy, the EEOC will be precluded from obtaining relief on behalf of the deceased Rex.

        Accordingly, IT IS HEREBY ORDERED that:

1.      Plaintiff's motion for summary judgment as to Defendant's first (failure to state a claim), second (statute of limitations), fourth (conditions precedent), fifth (misconduct), sixth (impossibility), seventh (*in pari delicto*), eighth (statute of limitations), and ninth (reservation of affirmative defenses) affirmative defenses is GRANTED;

2.      Plaintiff's motion for summary judgment as to Defendant's third affirmative defense (failure to mitigate) is DENIED;

3.      Defendant's motion for summary judgment on the issue of conciliation is DENIED;

4.      Defendant's motion for summary judgment regarding Rule 25(a) is DENIED;

5.      Defendant's motion for summary judgment regarding Carlberg's damages is DENIED;

6.      Defendant's motion for summary judgment regarding Plaintiff's ADEA claim is DENIED;

7.    Defendant's motion for summary judgment regarding laches and Carlberg is DENIED; and

8.    Defendant's motion for summary judgment regarding laches and Rex is GRANTED and the EEOC may not recover liquidated or compensatory damages on behalf of Rex.

IT IS SO ORDERED.

Dated:    August 13, 2010                                         

CHIEF UNITED STATES DISTRICT JUDGE